**STATE of Minnesota, petitioner, Appellant,**

v.

**Paul Luther HEREM, Respondent.**

**No. C5-84-701.**

Supreme Court of Minnesota.

April 11, 1986.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Lynch, Kandiyohi Co. Atty., Willmar, for appellant.

Mark F. Uphus, Willmar, for respondent.

COYNE, Justice.

Defendant Paul Luther Herem was convicted of fleeing an officer, driving while under the influence of alcohol, and careless driving. After denial of his motion for acquittal or a new trial, defendant appealed, claiming the trial court had erred in declining to suppress statements made to a police officer at the scene of a traffic stop.

The court of appeals found that the questioning amounted to a custodial interrogation, necessitating a *Miranda* warning, and reversed and remanded for a new trial. We reverse and reinstate the judgment of conviction.

Shortly before midnight on September 2, 1983, Kandiyohi County Deputy Sheriff Steven Marquardt clocked a motorcycle traveling at 72 miles per hour in the westbound lane of Highway 23. Marquardt, who had been driving in the opposite direction, locked in the radar, turned around, activated his flashing red lights and siren, and gave chase. The speed of the motorcycle increased. Marquardt pursued at speeds over 100 miles per hour for three to four miles until the motorcycle turned into a gravel road, then stopped after traveling another 300 yards.

The deputy and the defendant—the operator of the motorcycle—met halfway between the two vehicles. The deputy told defendant why he had been stopped, asked to see defendant's driver's license, brought him to the squad car and then showed defendant the radar flashing 72. As they walked toward the patrol car, the deputy smelled alcohol. Marquardt placed the defendant in the police car and then went back to the motorcycle to identify the passenger.

After returning to the squad car, the deputy asked defendant if he knew he was speeding, and defendant said he did. He asked defendant if he had seen the patrol car, and defendant said he had seen the deputy's brake lights come on and he had seen the red rotating lights behind him. Marquardt then asked if defendant had tried to run away, and defendant replied, "No, I'd never do that." In answer to a question about the reason for speeding, the defendant said his girlfriend was having trouble with her niece and he was just in a hurry to get home. Marquardt then asked defendant if he had been drinking and defendant admitted he had been drinking about ten minutes earlier.

Apparently the deputy asked the defendant to take a preliminary breath test, ex-

plaining the test result would not be used in court against him but if defendant failed, he would have to go into Willmar with Marquardt. When defendant failed the test, he was placed under arrest.

Only Marquardt testified at the omnibus hearing. He testified that he asked defendant the first questions before they reached the patrol car and that he could not remember if the defendant was on the front seat or in the back when they were talking.[1] Asked by defense counsel if defendant was "free to leave upon his stopping for you," Marquardt replied, "Not until I had finished talking to him." When the question was repeated, Marquardt answered, "Well, there is either going to be a ticket issued or some other course of conduct."

In denying the defendant's motion to suppress, the trial court assessed the situation in these words:

I think there's been enough federal cases that have clarified this issue. And he was not interrogated in a custodial situation. And I am denying the motion of the defendant.

Frankly, I don't see where there were statements of any importance here as far as damaging the defendant anyway as a practical matter.

The court of appeals, however, concluded that "[p]lacing [defendant] inside the squad car, keeping him there and not allowing him to leave while questioning him, constitutes a custodial interrogation," thus entitling defendant to a *Miranda* warning.

The United States Supreme Court decided in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), that the roadside questioning of a motorist detained pursuant to a routine traffic stop was not "custodial interrogation" requiring a warning consistent with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16

L.Ed.2d 694 (1966). Writing for the majority, Justice Marshall conceded that a traffic stop significantly impinges on a motorist's freedom of action:

It must be acknowledged at the outset that a traffic stop significantly curtails the "freedom of action" of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission.

*Id.* 104 S.Ct. at 3149. Nevertheless, the Court declined to accord "talismanic power" to the "freedom of action" phrase that appears in the *Miranda* opinion:

Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated. Thus, we must decide whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.

*Id.*

The Court regarded two features of the ordinary traffic stop as mitigating the danger that the person questioned will be induced "to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. at 467, 86 S.Ct. at 1624. First, traffic stops are presumptively temporary and brief. *Berkemer*, 104 S.Ct. at 3149. The motorist stopped expects a short delay while some questions are answered and his or her license is verified, that a citation or warning may be issued, and that the motorist will then probably be free to go. Second, the typical traffic stop involves circumstances such that the motorist does not

---

1. The record on appeal does not include the trial transcript, but only the transcript of the omnibus hearing. Although it is apparent that Marquardt referred to his report of the incident while testifying and that defense counsel used the report in his cross-examination, the report was neither offered nor admitted into evidence. Nevertheless, defendant has reproduced the dep-

uty's report in the appendix to his brief and bases his contention that he was in the back seat of the patrol car on a statement in the report. The court of appeals accepted that statement as fact. For purposes of this appeal we, too, assume that the defendant was sitting in the rear of the patrol car while the deputy questioned him.

feel completely at the mercy of the police. *Id.* at 3150. That most traffic stops are conducted in public and that usually only one or two officers are involved blunt the motorist's sense of vulnerability. The questioning incident to the ordinary traffic stop is less prolonged and the atmosphere less "police dominated" than that surrounding the types of interrogation at issue in *Miranda* and the cases applying *Miranda*. Likening noncoercive aspects of the traffic stop to the comparatively non-threatening character of the *Terry* stop, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that persons temporarily detained pursuant to an ordinary traffic stop are not "in custody" for purposes of *Miranda*. *Id.* 104 S.Ct. at 3151.

Turning to the facts in *Berkemer* to determine whether the officer's treatment of the respondent was so out of the ordinary that respondent was for practical purposes "in custody," the Court concluded that it was not:

> [R]espondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Only a short period of time elapsed between the stop and the arrest. At no point during that interval was respondent informed that his detention would not be temporary * * * * Nor do other aspects of the interaction of Williams and respondent support the contention that respondent was exposed to "custodial interrogation" at the scene of the stop. From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions [including whether the respondent had been using intoxicants] and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest.

*Id.* at 3151–52.

So too, in the present case, defendant has failed to demonstrate treatment which can fairly be characterized as the functional equivalent of formal arrest. The stop and the questioning of defendant and his passenger involved only a short period of time, and it was not until defendant failed the preliminary breath test that he was informed that his detention would not be temporary. We have previously held that questioning at the side of a highway during an investigative stop was not custodial in nature and that a *Miranda* warning was not required. *In re Welfare of M.A.*, 310 N.W.2d 699 (Minn.1981). Nor does the fact that the brief questioning of defendant took place in the patrol car convert an ordinary traffic stop into a custodial interrogation. A three-mile high speed chase on a well traveled highway had terminated when the defendant stopped after turning into a lonely gravel road. That the lone deputy should separate the occupants of the motorcycle while asking each a few questions seems only prudent under the circumstances. An officer does not, by ordering a person to lie on the ground, necessarily convert a stop into a de facto arrest. *State v. Nading*, 320 N.W.2d 82 (Minn. 1982). It seems to us that the trial court was justified in concluding that simply requiring defendant to sit in a police car for a short time, an act much less intimidating or coercive than an order delivered at gunpoint, did not take the situation beyond the realm of the ordinary traffic stop. *See* Model Code of Pre-Arraignment Procedure, § 110.2, comment 7 at 283 (1975).

■ Nor does the officer's subjective intent or his belief that defendant was driving under the influence and had committed other offenses of itself necessitate a *Miranda* warning. The United States Supreme Court has held that the fact that an officer consciously sought to elicit incriminating statements and that the defendant was the focal point of the investigation did not automatically entitle defendant to a *Miranda* warning. *Minnesota v. Murphy*, 465 U.S. 420, 431, 104 S.Ct. 1136, 1144, 79 L.Ed.2d 409 (1984). Similarly, in *Berkemer* the Court held that the officer's "unarticulated plan [to arrest the defendant] has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable

man in the suspect's position would have understood his situation." 104 S.Ct. at 3152.[2]

This court, too, has focused on the custody question in determining the need for a *Miranda* warning:

> [T]he test for determining the need for a *Miranda* warning is not whether the interrogation has coercive aspects to it or whether the investigation has focused on the person being questioned, but whether the person being questioned is in custody or is deprived of his freedom of action in any significant way.

*State v. Palm*, 299 N.W.2d 740, 741 (Minn. 1980). We have already ruled that an ordinary traffic stop is not the functional equivalent of a formal arrest. Under the test set out in the three cited cases, the deputy's suspicions that defendant had tried to flee from him and that he was driving while intoxicated would have been relevant only if they had been communicated to defendant in such a way that he reasonably believed that he was in custody. There is no evidence that the deputy's suspicions or intentions were apparent to defendant or that defendant entertained such a belief, either reasonably or otherwise. Indeed, defendant apparently believed he was not under arrest because when the deputy asked him to take a preliminary breath test, defendant suggested that the deputy should just let him go.

Finally, as we recently reemphasized, not all errors in admitting illegally obtained confessions or statements justify overturning a conviction and granting a new trial:

> Normally, a criminal defendant cannot obtain a new trial on appeal by establishing that error occurred in the conduct of the trial unless he provides this court with a complete transcript or an appropriate stipulation concerning what would be disclosed by a complete transcript * * Without such a transcript or stipulation we cannot verify whether the error resulted in prejudice.

*State v. McMorris*, 373 N.W.2d 593, 595 (Minn.1985), quoting *State v. Anderson*, 351 N.W.2d 1, 2 (Minn.1984). Here, the record on appeal includes only the transcript of the omnibus hearing. Even if we assume not only that the statements defendant sought to exclude were admitted at trial but also that it was error to admit them, we nevertheless have no way to determine whether their admission was prejudicial in the face of the radar clocking, the high speed chase, and the deputy's detection of a strong odor of alcohol and his observation of defendant's watery and bloodshot eyes and slurred speech. On the state of the record before us we cannot say that the trial court, which heard the testimony, clearly erred in denying defendant's motion for a new trial.

The decision of the court of appeals is reversed and the judgment of conviction is reinstated.

**2.** The court of appeals relied in part on dictum in *State v. Kinn*, 288 Minn. 31, 35, 178 N.W.2d 888, 891 (1970), that a *Miranda* warning is required once the officer has focused his suspicion on the suspect and decided to take him into custody. *State v. Herem*, 371 N.W.2d 40, 43 (Minn.App.1985). Apparently, we have never expressly overruled this dictum. However, since *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), and *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)—which unequivocally declared that custody, not focus of suspicion, is the test—we have followed the custody test. *See, e.g., State v. Ousley*, 312 Minn. 546, 254 N.W.2d 73 (Minn.1977). In order to prevent any further confusion, we now expressly overrule the *Kinn* dictum.

Under *Berkemer's* objective approach to custody, a warning is required only if a reasonable man in the suspect's position would understand that he is in custody. Thus, *e.g.*, in appropriate circumstances an officer who has probable cause to arrest a lawfully stopped driver for DWI may briefly defer arresting the driver in order to question him without giving him a *Miranda* warning. We have previously observed that once the officer places the driver under arrest for DWI it makes sense to complete the implied consent part of the investigation before giving the driver a *Miranda* warning and questioning him further, because of the danger that the giving of the *Miranda* warning contemporaneously with the implied consent warning will confuse the driver. *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 516 (Minn.1985), *appeal dismissed*, —— U.S. ——, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985).