**STATE of Minnesota, CITY OF ST. PAUL, Appellant,**

v.

**John Joseph LYNCH, Respondent.**

**No. C2–91–819.**

Court of Appeals of Minnesota.

Nov. 26, 1991.

Hubert H. Humphrey, III, Atty. Gen., Jane A. McPeak, St. Paul City Atty., Virginia D. Palmer, Deputy City Atty., St. Paul, for appellant.

Richard A. Sand, Michelle M. Danielson, St. Paul, for respondent.

Considered and decided by KLAPHAKE, P.J., CRIPPEN and LOMMEN,* JJ.

## OPINION

CRIPPEN, Judge.

This is a pretrial appeal by the state pursuant to Minn.R.Crim.P. 28.04, subd. 1(1) from an order suppressing incriminating statements made by respondent.

## FACTS

On November 15, 1990, at about 1:45 a.m., St. Paul Police Officer Jeffery Hutchinson stopped respondent John Lynch after seeing him drive his car through a stop sign. Lynch was subsequently charged with engaging in prostitution, a gross misdemeanor, Minn.Stat. § 609.324, subd. 3 (1990), and possessing a small amount of marijuana in a motor vehicle, a misdemeanor. Minn.Stat. § 152.027, subd. 3 (1990).

In pretrial proceedings, respondent moved to suppress evidence of an answer he gave to questions of Officer Susan Drutschmann during detention following Officer Hutchinson's stop. Neither Officer Hutchinson nor Officer Drutschmann had given respondent a *Miranda* warning before this statement was made. The trial court suppressed Lynch's statement, concluding that Lynch was subjected to a custodial interrogation and had a fifth amendment right to receive a *Miranda* warning before Officer Drutschmann questioned him.

Relevant to the trial court's conclusion that Lynch was subjected to a custodial interrogation, the record reveals these additional facts:

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

a) When Officer Hutchinson initially stopped Lynch, he immediately noticed that Lynch's passenger was a known prostitute.

b) As soon as Lynch stopped his car, Officer Hutchinson saw his passenger put something underneath her seat. She then jumped out of the car and started screaming that Lynch would not let her out of his car. The state noted at oral argument that this was "typical" conduct for a "prostitution" case and a police officer could have stopped Lynch for engaging in prostitution.

c) While Officer Hutchinson administered a pat-down search, he told Lynch that his passenger said Lynch would not let her out of his car and that engaging in that type of activity was a felony.

d) A few minutes after Officer Hutchinson stopped Lynch, Officer Drutschmann arrived on the scene. She told Officer Hutchinson that she stopped Lynch about an hour earlier and issued him two citations. When she stopped Lynch earlier that night, she warned him about driving around looking for prostitutes and she then suggested that he go home. At the scene of the second stop, Officer Drutschmann began to question Lynch out of the presence of Officer Hutchinson. She first said to respondent, "I thought you were going home?" She then asked, "what is your side of the story?" Following these questions, Lynch stated that he offered his passenger five dollars and some marijuana for a sex act. When she questioned Lynch after this second stop, Officer Drutschmann did not know that Officer Hutchinson stopped Lynch for driving through a stop sign.

e) After Lynch's admission, Officer Drutschmann proceeded to arrest him. Approximately 15 minutes elapsed between the time Officer Hutchinson stopped Lynch until the time Lynch was arrested.

f) While Officer Drutschmann questioned Lynch, Officer Hutchinson searched the interior of Lynch's car and discovered .05 ounce of marijuana. It is evident Lynch could see that the car was being searched and knew Officer Hutchinson would find marijuana in the car.

## ISSUE

Did the trial court clearly err in concluding that respondent was subjected to a custodial interrogation?

## ANALYSIS

■ When reviewing questions of law, normally we need not defer to the trial court's decision. *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn. 1977). On the state's pretrial appeal, however, we are not free to reverse the trial court's decision to suppress Lynch's statement merely because this court would decide the case differently. Instead, we must affirm unless the state demonstrates "clearly and unequivocally" that the trial court erred in its judgment and that unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)).

The Supreme Court promulgated *Miranda* practice as a procedural safeguard against violation of a suspect's fifth amendment right against self-incrimination. *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The rule applies to statements elicited during "custodial interrogation," which is questioning by police officers "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612 (footnote omitted).

In *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–3152, 82 L.Ed.2d 317 (1984), the Supreme Court held that the prearrest roadside questioning of a defendant pursuant to a routine traffic stop did not constitute a "custodial interrogation" for purposes of the *Miranda* rule. The Court reasoned that the detainee in an ordinary traffic stop, because of the brevity of the stop and its occurrence in public view, is not under sufficient pressure to make warning on his constitutional rights necessary. *Id.* at 437–38, 104 S.Ct. at 3149; *see also State v. Herem*, 384 N.W.2d 880, 883 (Minn.1986) (police officer's brief interroga-

tion of the defendant in his patrol car at the scene of a traffic stop was not custodial interrogation); *cf. State v. Seekon,* 392 N.W.2d 624, 626 (Minn.App.1986) (when police officers stop a person in a car who is suspected of committing a felony, the officers must give a *Miranda* warning at time of initial stop before any questioning), *pet. for rev. denied* (Minn. Oct. 17, 1986).

We do not understand *Berkemer* to mandate *Miranda* warnings on any stop more intrusive than a routine traffic stop. Similarly, although in some cases *Miranda* does not apply to traffic stops, there is no precedent suggesting that all stops are noncustodial if prompted initially by a traffic offense. Both *Berkemer* and *Herem* were examples of noncustodial stops. The *Berkemer* court cautioned that a motorist may be entitled to *Miranda* protections if an ordinary traffic stop is followed by treatment practically rendering the person in custody. *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150. *Miranda* applies, the Court explained, when the motorist's freedom of action is curtailed to a "degree associated with formal arrest." *Id.* (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520 (1983) (per curiam)).

■ There were numerous factors involved in Lynch's detention. We are in no position to conclude that the trial court clearly erred. Here, as in *Berkemer,* the prearrest detention was brief and occurred on a public street. However, when Lynch was stopped for the traffic offense, there were immediate and apparent indications that he was involved in a prostitution offense. The stop occurred at 1:45 a.m. in a neighborhood where police had been patrolling to control prostitution. Officer Hutchinson observed facts routinely associated with a prostitution case. He told Lynch that he could be charged with a felony, and Hutchinson then conducted a search of respondent's car.

Lynch was not questioned by the police who stopped him for the traffic offense. Instead, he was questioned by a second officer who stopped him earlier and warned him about engaging in prostitution activity. When Officer Drutschmann questioned Lynch, she was unaware Lynch had been initially stopped for a traffic offense.

The trial court also concluded that questioning of respondent constituted interrogation for *Miranda* law purposes. The court found that Lynch was asked a question germane to the two offenses with which he was charged. He was not asked a question concerning the traffic violation.

■ An interrogation includes express questioning and words and actions by police officers, which "the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (footnote omitted). The state contends that a direct inquiry on the prostitution charge was not an interrogation. To the contrary, a direct inquiry of this kind is an interrogation. In *Berkemer,* before the arrest, the police officer asked the defendant questions germane to the traffic stop. *Berkemer,* 468 U.S. at 423, 104 S.Ct. at 3141; *see also Herem,* 384 N.W.2d at 881 (police officer in *Herem* asked motorist about his speed, failure to stop, and alcohol consumption). In this case, a direct inquiry on a gross misdemeanor offense was not germane to the traffic offense prompting the initial stop. In addition, the trial court did not err in concluding that the questioning in this case was not threshold and investigatory. *See In re Welfare of M.A.,* 310 N.W.2d 699, 700 (Minn.1981).

## DECISION

The trial court's order suppressing respondent's admission was not clearly erroneous.

Affirmed.

LOMMEN, Judge (dissenting).

I respectfully dissent on the grounds that Lynch was not in custody when interrogated and, therefore, a *Miranda* warning was not required.

This encounter began when Lynch was stopped for running a stop sign. The only unusual feature was the emergence of Lynch's passenger, screaming that Lynch

would not let her out of his car. Prior to the stop, the police had no grounds to charge Lynch with engaging in prostitution.

There were two police officers present. One of them did a pat-down search of Lynch and the passenger, put the passenger in his squad car, and went to check Lynch's car for contraband. The other confronted Lynch, who was standing between his car and the police car. The officer asked, "What's your side of the story?" In response, Lynch made the incriminating statement and was arrested. The entire episode revolved around the investigation of the conduct of Lynch and the passenger at the scene of the stop. The questions were reasonably connected to determining what happened.

The traffic stop in this case, like an ordinary traffic stop, had two features that mitigated the danger that Lynch would have been induced "to speak where he would not otherwise do so freely." *Miranda v. State of Arizona*, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624 (1966). First, Lynch's detention pursuant to this traffic stop was temporary and brief. *Berkemer v. McCarty*, 468 U.S. 420, 437, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). He was detained for approximately 15 minutes. Second, Lynch was not subjected to circumstances that made him feel completely at the mercy of the police. *Id.* at 438, 104 S.Ct. at 3149. The police officers allowed Lynch to stand on the street behind his car in public view. This reduced the ability of the police officers "to use illegitimate means to elicit self-incriminating statements" and diminished Lynch's fear that, "if he [did] not cooperate, he [would] be subjected to abuse." *Id.*

In *State v. Herem*, 384 N.W.2d 880, 883 (Minn.1986), the Minnesota Supreme Court held that a police officer's brief interrogation of the defendant in his patrol car was not a custodial interrogation entitling the defendant to a *Miranda* warning. *See also State v. Moffatt*, 450 N.W.2d 116, 119 (Minn.1990) (placing of men in squad car did not convert detention into de facto arrest); *State v. Clepper*, 399 N.W.2d 574,

575 (Minn.App.1987) (detention of defendant in squad car did not require *Miranda* warning to render statements made by defendant to deputy admissible). In the cases cited above, the placing of a suspect in a police squad car out of public view did not convert the detention into custody. When Lynch was questioned, he was standing on a public street. He was under less constraints than the suspects in the above cases.

For these reasons, the traffic stop in this case was not custodial, and the police officers were not required to give a *Miranda* warning. The trial court clearly erred in suppressing Lynch's statement.