*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0772**

State of Minnesota,
Respondent,

vs.

Paul Richard Dehn,
Appellant.

**Filed February 17, 2015
Affirmed
Kirk, Judge**

Blue Earth County District Court
File No. 07-CR-10-4316

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ross E. Arneson, Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Calvin P. Johnson, Elizabeth M. Levine, Calvin P. Johnson Law Firm, LLC, Mankato, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this appeal following his convictions of third-degree driving under the influence, appellant Paul Richard Dehn raises several arguments regarding the legality of

the traffic stop, the implied-consent process, and the administration of his court trial. We affirm.

**FACTS**

Following a traffic stop on October 2, 2010, appellant was charged with two counts of third-degree driving while impaired. Appellant later moved to suppress evidence from the stop. The district court denied appellant's motion to suppress, concluding that the traffic stop was reasonable, appellant was not entitled to a *Miranda* warning, the police officers vindicated appellant's limited right to counsel, and appellant consented to the urine test. The parties then conducted a trial before the district court. Following the trial, appellant challenged the state's introduction of testimony regarding appellant's preliminary breath test (PBT), the Minnesota Bureau of Criminal Apprehension (BCA) report regarding appellant's alcohol concentration, and defense counsel's testimony at trial, and argued that the prosecutor had committed misconduct. The district court rejected appellant's arguments regarding the admission of evidence and the prosecutor's conduct and found appellant guilty of both counts of driving while impaired. This appeal follows.[1]

---

[1] Because the state did not file a brief in this appeal, we ordered the matter to be determined on the merits pursuant to Minn. R. Civ. App. P. 142.03. A brief from the state in this complicated, multi-issue appeal would have been helpful to this court.

**D E C I S I O N**

**I.    The district court did not err by concluding that the officers were justified in conducting a traffic stop of appellant's vehicle.**

Appellant first argues that the district court erred in concluding that the police officers were justified in conducting a traffic stop of his vehicle.  When reviewing a pretrial order denying a motion to suppress evidence, this court "review[s] the facts to determine whether, as a matter of law, the court erred when it failed to suppress the evidence."  *State v. Flowers*, 734 N.W.2d 239, 247 (Minn. 2007).  "[W]e review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo."  *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures.  U.S. Const. amend. IV; Minn. Const. art. I, § 10.  A police officer's temporary detention of an individual during a traffic stop constitutes a seizure.  *State v. Thiel*, 846 N.W.2d 605, 610 (Minn. App. 2014), *review denied* (Minn. Aug. 5, 2014).  But "[l]imited investigatory stops are allowed if police have reasonable articulable suspicion of a motor vehicle violation or of criminal activity."  *State v. Johnson*, 645 N.W.2d 505, 508 (Minn. App. 2002).  To justify an investigatory traffic stop, "the police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (quotation omitted).

"[I]f an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). But an officer's observation of a single instance of swerving within a traffic lane does not, by itself, create reasonable, articulable suspicion to support a traffic stop. *State v. Brechler*, 412 N.W.2d 367, 368-69 (Minn. App. 1987). Nevertheless, this court has determined that swerving within a traffic lane and crossing over the center line can provide a reasonable, articulable suspicion sufficient to justify a traffic stop. *See, e.g.*, *State v. Wagner*, 637 N.W.2d 330, 336 (Minn. App. 2001) (finding an objective, reasonable basis to conduct a traffic stop when the driver crossed the center line and drove on the shoulder); *State v. Dalos*, 635 N.W.2d 94, 96 (Minn. App. 2001) (holding that "continuous weaving within one's own lane is sufficient by itself to create a reasonable articulable suspicion of criminal activity to support a traffic stop").

Here, the district court concluded that the traffic stop was justified because Blue Earth County Sheriff's Deputy Scott Wolfe saw appellant's vehicle "weave continuously within its own lane and cross over the center line on one occasion." Appellant argues that this conclusion was erroneous because his alleged driving conduct was not captured on Deputy Wolfe's squad-car video. But Minnesota does not require driving conduct to be captured on a squad-car video in order to find a reasonable, articulable suspicion to conduct a traffic stop. *See George*, 557 N.W.2d at 578 (explaining that an officer's observations can provide an objective basis to conduct a traffic stop). And, even though Deputy Wolfe testified on direct examination that the squad-car video recorded appellant's driving conduct, he later clarified that the recording automatically started

when he turned on his emergency lights to stop appellant's vehicle so appellant's prior driving conduct was not recorded. The district court specifically "credit[ed] Deputy Wolfe's testimony" regarding appellant's driving conduct and the timing of the squad-car recording. We defer to the district court's credibility determinations on appeal. *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012).

The district court's factual findings regarding appellant's driving conduct are supported by the record. Because Deputy Wolfe observed appellant's vehicle weave within its traffic lane and cross over the center line "at least one time," the district court did not err in finding a reasonable, articulable suspicion of criminal activity sufficient to justify the traffic stop. *See Wagner*, 637 N.W.2d at 336; *Dalos*, 635 N.W.2d at 96.

## II. The district court did not err by concluding that appellant was not entitled to a *Miranda* warning.

Appellant next argues that the district court erred in declining to suppress evidence because the state should have advised him of his *Miranda* rights. "The issue of whether a suspect is in custody and therefore entitled to a *Miranda* warning presents a mixed question of law and fact" that requires "independent review of the [district] court's determination regarding custody and the need for a *Miranda* warning." *State v. Sterling*, 834 N.W.2d 162, 167-68 (Minn. 2013) (quotations omitted).

The United States and Minnesota Constitutions protect an individual from compelled self-incrimination. U.S. Const. amend. V; Minn. Const. art. I, § 7. "Statements made by a suspect during a custodial interrogation are admissible only if the statement was preceded by a *Miranda* warning. Thus, a *Miranda* warning is required if a

5

suspect is both in custody and subject to interrogation." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010) (quotation and citations omitted). An individual is in custody if, "based on all the surrounding circumstances, a reasonable person under the circumstances would believe that he or she was in police custody of the degree associated with formal arrest." *Id.* (quotation omitted).

Appellant does not clearly state the point at which he believes he was "in custody," but appears to suggest that it was at some point during his conversation with Deputy Wolfe, perhaps when Deputy Wolfe took possession of appellant's driver's license. When a police officer asks questions at the scene to gather information, no *Miranda* warning is required. *State v. Walsh*, 495 N.W.2d 602, 604-05 (Minn. 1993). Similarly, "*Miranda* generally does not apply to temporary investigative detentions." *State v. Perkins*, 353 N.W.2d 557, 560 (Minn. 1984). Because traffic stops are generally temporary, brief, and conducted in public, a stopped motorist is usually not in custody for *Miranda* purposes. *State v. Herem*, 384 N.W.2d 880, 882-83 (Minn. 1986). In addition, the supreme court has explained that police officers are not required to give a driver a *Miranda* warning before reading the implied-consent advisory and administering a chemical test. *State v. Gross*, 335 N.W.2d 509, 510 (Minn. 1983) (citing *South Dakota v. Neville*, 459 U.S. 553, 564 n.15, 103 S. Ct. 916, 923 n.15 (1983)).

Citing *Herem*, the district court concluded that appellant was not in custody during the October 2 traffic stop. In *Herem*, a police officer stopped a speeding motorcyclist, escorted him to a patrol car to separate him from his passenger, smelled alcohol, and performed a PBT. 384 N.W.2d at 881, 883. The supreme court concluded that the

motorcyclist was not in custody even though he was questioned in the officer's patrol car. *Id.* at 883. Here, the district court concluded that there was even less evidence that appellant was in custody because he was questioned while sitting in his own vehicle and while performing field sobriety tests.

We agree with the district court's determination that appellant was not in custody during the traffic stop and field sobriety testing. The traffic stop was fairly brief, conducted in public, and no different than other routine traffic stops that are expanded to include field sobriety testing. *See id.* at 882-83. In addition, no caselaw suggests that appellant was entitled to a *Miranda* warning before performing field sobriety tests or hearing the implied-consent advisory. *See Gross*, 335 N.W.2d at 510 (explaining that a *Miranda* warning is not required). Appellant challenges *Gross* on the basis that it discusses an earlier version of Minnesota's implied-consent law. But *Gross* remains good law and is consistent with other caselaw in this area. *See Walsh*, 495 N.W.2d at 604-05 ("On-the-scene questioning, where the officers are simply trying to get a preliminary explanation of a confusing situation, does not require a *Miranda* warning." (quotation marks omitted)). Because we conclude that appellant was not in custody during the traffic stop, he was not entitled to a *Miranda* warning, and the district court properly declined to suppress evidence on that basis.

III. **The district court did not err by concluding that appellant consented to the urine test, the officers vindicated appellant's right to counsel, and the implied-consent statute is constitutional.**

Appellant next raises several arguments regarding Minnesota's implied-consent process, arguing that (1) he did not consent to a warrantless search; (2) he was not

7

allowed to vindicate his right to counsel; and (3) the implied-consent process violates both his due-process rights and the unconstitutional-conditions doctrine.

### A. Appellant consented to the urine test.

The district court concluded that appellant voluntarily consented to the urine test because he was read the implied-consent advisory four times, indicated that he understood the advisory each time, and was "given ample opportunity to contact an attorney." But appellant argues that his consent to the PBT and urine test were coerced because (1) he was confronted by a uniformed and armed police officer; (2) he was arrested, handcuffed, and placed in the back of a squad car next to a police dog; and (3) he was unable to reach an attorney at 1 a.m. while at the police station. We analyze the district court's finding that consent to search was voluntary for clear error, which occurs when "we are left with the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846-47 (Minn. 2011).

Collecting and testing a person's blood, breath, or urine constitutes a search under the Fourth Amendment and requires a warrant or an exception to the warrant requirement. *Ellingson v. Comm'r of Pub. Safety*, 800 N.W.2d 805, 807 (Minn. App. 2011) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989)), *review denied* (Minn. Aug. 24, 2011). Consent is an exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). "For a search to fall under the consent exception, the [s]tate must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* "Whether consent is voluntary is determined by examining the totality of

8

the circumstances." *Id.* (quotation omitted). A driver's decision to take a test is not coerced or extracted "simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570.

A totality-of-the-circumstances analysis requires consideration of the nature of appellant's encounter with the police and "what was said and how it was said." *See id.* at 569. Deputy Wolfe observed appellant's vehicle weave in its traffic lane and cross over the center line "at least one time." When he approached appellant, he observed appellant's glassy and bloodshot eyes, and he detected an odor of alcohol emanating from appellant's breath. Appellant admitted to Deputy Wolfe that he had consumed a few beers. When Mapleton Police Officer Kyley Groby approached appellant, she independently smelled a "strong odor of alcohol on [appellant's] breath," and observed red, glossy, and watery eyes. Appellant told Officer Groby that he had had six drinks. Appellant then agreed to perform field sobriety testing, and, after being unable to complete the tests, agreed to the PBT.

Appellant does not challenge the officers' probable cause to suspect him of driving under the influence. And, contrary to appellant's allegation, the record contains no evidence that Deputy Wolfe was armed or that he displayed his weapon in any way to intimidate appellant. In addition, even though he was handcuffed and placed in the back of a squad car next to a police dog, appellant was read the implied-consent advisory and indicated that he wished to consult an attorney. There is no evidence that the presence of the police dog in the squad car coerced appellant into consenting to the urine test at the police station after he had heard the advisory three more times.

9

Based on our review of the record, at the police station, the officers gave appellant a station phone, his cell phone, and a phone book. Appellant left a message for his attorney and spoke to his wife, but declined to contact any other attorneys. He spent much of his time staring at the officers. Appellant heard the implied-consent advisory four times and stated that he understood the advisory each time. After hearing the advisory for the fourth time, appellant agreed to a blood test, but requested a urine test due to his fear of needles.

No evidence suggests that appellant's consent "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See id.* at 571. Therefore, the district court did not err in concluding that appellant consented to the urine test and in denying appellant's motion to suppress. *See id.* at 572 ("[T]he fact that someone submits to a search after being told that he or she can say no to the search supports a finding of voluntariness.").

**B.  The officers vindicated appellant's right to counsel.**

"[A]n individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). But due to "the evanescent nature of the evidence in DWI cases," the individual only has a limited amount of time to contact an attorney. *Id.* "The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Id.* (quotation omitted). "The question of whether a person has been allowed a reasonable time to consult with an attorney is a mixed question of law and

10

fact." *Parsons v. Comm'r of Pub. Safety*, 488 N.W.2d 500, 501 (Minn. App. 1992). Once the facts are established, the question becomes one of law. *Id.*

Appellant argues that the district court erred in concluding that the officers vindicated appellant's limited right to counsel because (1) the station phone did not work the entire time; (2) appellant was subject to verbal abuse by a police officer; (3) appellant was not told he could contact an attorney during the fourth reading of the implied-consent advisory; and (4) appellant was subject to police intimidation for over an hour. Appellant argues that the district court's findings "cannot be reconciled" with the audio recording of the implied-consent process.

But our review of the audio recording does not support appellant's allegations. The recording does not contradict Officer Groby's testimony that she immediately gave appellant a station phone, his cell phone, and a telephone book at the station. Nor does it reveal any "verbal abuse" from the officers or "police intimidation." There are sections of silence where appellant does not appear to be making phone calls, and the officers explained that this was his chance to contact an attorney. According to Officer Groby's timeline, appellant was given 30 minutes at the police station to contact an attorney. Even though the station phone did not work the entire time, appellant testified that he was able to use his cell phone, that he made two phone calls, and that he did not attempt to contact another attorney. The mere fact that appellant was unable to reach his attorney does not indicate that his consent was coerced. *See Kuhn v. Comm'r of Pub. Safety*, 488 N.W.2d 838, 841-42 (Minn. App. 1992) (stating that the right to counsel is vindicated

even when the driver cannot locate his attorney and does not wish to call another attorney), *review denied* (Minn. Oct. 20, 1992).

When Officer Groby gave her fourth and final reading of the implied-consent advisory, she omitted the section regarding appellant's right to consult with an attorney. The implied-consent law requires a driver to be informed "at the time a test is requested" that he "has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test." Minn. Stat. § 169A.51, subd. 2(4) (2010). Appellant apparently suggests that Officer Groby was required to read the full advisory, each time, including the time he consented to the urine test. But Officer Groby had already read the full advisory three times, and appellant always stated that he understood the advisory. The statute does not require the advisory to be read at a specific time or multiple times. *See id.* And the officers were not required to provide appellant with an unlimited amount of time to contact his attorney. *See Friedman*, 473 N.W.2d at 835. Given appellant's inability to contact his attorney and his apparent disinterest in contacting another attorney, it was reasonable for Officer Groby to skip the paragraph about contacting an attorney and to require appellant to "make a decision regarding testing in the absence of counsel." *See id.* (quotation omitted).

Appellant also suggests that his case is similar to *Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380 (Minn. App. 1993), *aff'd*, 517 N.W.2d 901 (Minn. 1994). In *Davis*, this court affirmed the district court's finding that a driver was not given a reasonable amount of time to contact an attorney based on "the early hour of the morning," the driver's repeated attempts to contact an attorney, and the police officer's "'arbitrary'

12

determination that her efforts to contact an attorney would be limited to 20 minutes." 509 N.W.2d at 385. But the only similarity to *Davis* is that the driver was attempting to contact an attorney in the early morning. *See id.* Unlike in *Davis*, where the driver was still making phone calls at the end of her 20-minute period, appellant made two phone calls in 30 minutes and often sat quietly and stared at the officers. Under these circumstances, the district court did not err by concluding that the officers did not violate appellant's limited right to consult an attorney. *See Kuhn*, 488 N.W.2d at 841 ("[R]efusing to try to contact more than one attorney or giving up trying to contact an attorney is fundamentally different than making a continued good-faith effort to reach an attorney.").

## C. Minnesota's implied-consent law is constitutional and does not violate the unconstitutional-conditions doctrine.

Appellant next challenges the constitutionality of Minnesota's implied-consent law. The constitutionality of a statute is a question of law that this court reviews de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014). "[A] party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision." *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011).

Appellant argues that Minnesota's implied-consent law is unconstitutional because the state was required to obtain a warrant before chemical testing. But, as stated above, consent is an exception to the warrant requirement. *Brooks*, 838 N.W.2d at 568. And appellant consented to the urine test.

13

Appellant also argues that the implied-consent law is unconstitutional because it violated his substantive-due-process rights. But we conclude that appellant has waived this argument because he did not raise it before the district court. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (explaining that an appellate court will not consider matters, including constitutional questions, that were not argued to and considered by the district court).

Finally, appellant argues that the implied-consent procedure violates the unconstitutional-conditions doctrine. But "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Brooks*, 838 N.W.2d at 570. Because appellant consented to the urine test, he cannot establish a violation of the unconstitutional-conditions doctrine.

**IV.    The district court did not err by denying appellant's motion for a mistrial based on prosecutorial misconduct.**

Appellant argues that the prosecutor committed misconduct by (1) eliciting testimony regarding appellant's PBT and (2) calling appellant's defense counsel to testify at trial. When reviewing a claim of prosecutorial misconduct, we "will reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003). "If the misconduct was serious, the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. For less serious misconduct, the standard is whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* (quotations and citations omitted).

Following the trial, appellant moved for a mistrial due to both of his allegations regarding prosecutorial misconduct, and the district court denied the motions. We review a district court's denial of a motion for a mistrial for abuse of discretion. *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). We reverse the district court's denial only if "there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *State v. Mahkuk*, 736 N.W.2d 675, 689 (Minn. 2007) (quotation omitted).

### A. The prosecutor did not commit misconduct by eliciting testimony regarding appellant's PBT.

During Officer Groby's testimony at trial regarding appellant's traffic stop and his failure to complete the field sobriety tests, the prosecutor asked whether the result of appellant's PBT indicated to her that she had probable cause to invoke the implied-consent advisory. The district court overruled appellant's objection to the prosecutor's reference to the PBT because the prosecutor did not ask for the PBT results.

In general, preliminary screening test results "must not be used in any court action." Minn. Stat. § 169A.41, subd. 2 (2010). But these test results may be used "to prove that a test was properly required of a person." *Id.*, subd. 2(1). Appellant argues that the testimony regarding his PBT was inadmissible under section 169A.41, subdivision 2, and that, therefore, the prosecutor committed misconduct. *See State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007) ("[A]ttempting to elicit or actually eliciting clearly inadmissible evidence may constitute misconduct.").

15

But the district court correctly concluded that appellant's PBT test results were not introduced at trial. Officer Groby merely indicated that the PBT created probable cause to invoke the implied-consent advisory. She did not discuss the test results or imply that appellant's PBT was "over the legal limit," as appellant suggests. Moreover, appellant's trial occurred before the district court, and the judge understood that the PBT was only mentioned "to prove that a test was properly required" of appellant. *See* Minn. Stat. § 169A.41, subd. 2(1). We conclude that the prosecutor did not commit misconduct by mentioning appellant's PBT, and the district court did not abuse its discretion by denying appellant's motion for a mistrial.

**B.      The prosecutor did not commit misconduct by calling defense counsel to testify.**

At trial, Dr. Kathryn Fuller, Ph.D., a forensic scientist from the BCA, testified regarding the results of appellant's urine test. Appellant's attorney challenged this testimony, claiming that the state did not disclose Dr. Fuller as an expert witness. In response, the prosecutor argued that appellant's attorney "had complete notice of who this witness would be," and the district court overruled appellant's objection. Following Dr. Fuller's testimony, the prosecutor called appellant's attorney to the stand "to inquire as to whether or not he received discovery in this case" regarding Dr. Fuller's qualifications. The defense attorney testified that someone on his staff had contacted Dr. Fuller before the trial, that he knew the state intended to call Dr. Fuller as a witness, and that he had received the state's discovery regarding Dr. Fuller.

16

Appellant argues that the prosecutor violated his Sixth Amendment right to counsel when he called his defense attorney as a witness. *See* U.S. Const. amend. VI; Minn. Const. art. I, § 6. In doing so, appellant relies on an appellate case from Washington, *State v. Regan*, 177 P.3d 783 (Wash. App. 2008). In *Regan*, the Washington Court of Appeals explained that the district court has broad discretion when allowing the prosecutor to call the defense counsel as a witness. 177 P.3d at 786. But the district court must balance "the right of the state to prove its case . . . and the right of the accused to have unhampered and effective representation." *Id.* at 787 (quotation omitted). Washington allows a prosecutor to call a defense attorney as a witness when the defense attorney's testimony "is both necessary and unobtainable from other sources." *Id.* at 788. Minnesota does not have a similar rule. *See* Minn. R. Prof. Conduct 3.7(a) (requiring an attorney who is a necessary witness to withdraw from the representation). And no caselaw suggests that Minnesota has adopted a balancing test like that in *Regan* for evaluating the admissibility of defense-attorney testimony. Appellant's (and the district court's) citation to *Regan* is therefore unpersuasive.

We conclude that the prosecutor did not commit misconduct by calling appellant's attorney to testify about this limited discovery topic and that, even if he did, the attorney's testimony did not impair appellant's right to a fair trial. *See Powers*, 654 N.W.2d at 678. In fact, the attorney's testimony was likely irrelevant to the district court's decision to convict appellant of driving under the influence. *See id.* At this point in the trial, the district court had already overruled appellant's objection to Dr. Fuller's testimony and had allowed the prosecutor to establish her as an expert. And appellant's

17

attorney cross-examined Dr. Fuller regarding the content of her report. In addition, the district court stated that it had independently evaluated the credibility of each witness before reaching its verdict. We again conclude that the district court did not abuse its discretion in denying appellant's motion for a mistrial.

**V.     The district court did not err in its evidentiary rulings.**

Finally, appellant argues that the state introduced the BCA report containing his urine test result without laying proper foundation, and that the introduction of this report violated his rights under the Confrontation Clause. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). The erroneous admission of evidence does not require reversal unless the error "substantially influence[d] the jury's decision." *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997). "But whether the admission of evidence violates a criminal defendant's rights under the Confrontation Clause is a question of law this court reviews de novo." *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).

A defendant has a constitutional right to confront the witnesses against him at trial. U.S. Const. amend. VI. Admitting a BCA report without the testimony of the BCA analyst who prepared it violates a defendant's confrontation-clause rights. *See Caulfield*, 722 N.W.2d at 306-07. But here, Dr. Fuller, the BCA analyst who prepared the report, testified at trial, providing appellant with the opportunity to confront the evidence against him. Nevertheless, appellant argues that he was unable to confront the evidence against him because the state did not introduce his urine sample into evidence. But appellant

cites no caselaw suggesting that the state must introduce a physical urine sample to enable a defendant to confront the evidence against him. Dr. Fuller was qualified to testify to the results of appellant's chemical test, and appellant was allowed to cross-examine her.

At trial, the district court appears to have allowed the introduction of the BCA report as a business record, although it did not specifically state its reasoning on the record. But, in its written order, the district court explained that the BCA report was admissible under Minn. R. Evid. 901. Under rule 901, "authentication or identification" is a condition precedent to the admissibility of evidence. Minn. R. Evid. 901(a). This requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Appellant does not challenge the district court's determination that the BCA report was admissible under rule 901.

Finally, appellant argues that the state did not establish which testing method the BCA used to test appellant's urine sample. But the officers testified that they collected appellant's urine sample, completed the required paperwork, and mailed the sample to the BCA. The BCA then created a laboratory-analysis-request form regarding appellant's sample collected at 1:32 a.m. on October 2, 2010, and provided a kit number to the sample. It later created a written report with the same kit number and date and time of collection, listing an alcohol concentration of .22. Dr. Fuller testified that she tested appellant's sample, following all BCA protocols, and that she authored the BCA report. Appellant cross-examined Dr. Fuller, but did not question her testing method. As the district court stated, "[a]ny doubt as to whether the sample Dr. Fuller received and tested

19

was in fact [appellant's] sample[] is fanciful and capricious."  We conclude that the district court did not abuse its discretion in admitting the BCA report into evidence.

**Affirmed.**