STATE of Minnesota, Appellant,

v.

**Rolland Lee MOFFATT, Gerald Joe Moffatt, and Terry Lee Theis, Respondents.**

No. C5–89–670.

Supreme Court of Minnesota.

Jan. 12, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and James A. Terwedo, Scott County Atty., Susan K. McNellis, Asst. County Atty., Shakopee, for appellant.

Dennis Miller, Golden Valley, for Rolland Lee Moffatt.

Mark Anderson, Asst. State Public Defender, Minneapolis, for Gerald Joe Moffatt.

Richard Indritz, Reed & Pond, Ltd., Mound, for Terry Lee Theis.

SIMONETT, Justice.

The issue on this pre-trial appeal by the state is whether the trial court erred in suppressing evidence on Fourth Amendment grounds in the prosecution of defendants for burglary and criminal damage to property. The court of appeals, in an unpublished opinion, affirmed the trial court's suppression order. We granted the state's petition for review and the defendant's cross-petition. Concluding that the police did not violate defendants' Fourth Amendment rights, we reverse and remand for trial.

At 2:04 a.m. on Friday, July 29, 1988, a burglar alarm went off at Prior Lake Marine, a business located in Savage but one which is closer to downtown Prior Lake than it is to downtown Savage. Officer Andrew Ferderer of the Prior Lake Police Department, responding to the dispatcher's request at 2:07 for assistance in investigating a burglary in progress, drove toward the scene of the burglary. The only car he saw was a red 1983 Plymouth Horizon with three men in it driving on a residential street just two blocks from Prior Lake

Marine and headed away from that area. Ferderer turned and stopped the car about a mile from the scene. The time of the stop was approximately 2:15 a.m.

Ferderer waited until Officer Terrance Gliniany of the Savage Police Department arrived to assist, then approached the car on foot. Another officer arrived a short time later. The three men in the car were all in short-sleeved shirts and jeans and were sweating heavily (their bodies were literally "soaked with sweat"). Although it was a warm night, the heavy sweating apparently was inconsistent with the men having just been driving around in the car. Ferderer could see that the driver and the rear-seat passenger were wearing tennis shoes and that the front-seat passenger was barefooted. In fact, as Gliniany testified, the front-seat passenger's feet were muddy.

After telling the men in the front-seat to put their hands on the dashboard (a security precaution), Ferderer asked the driver, Theis, what he was doing in the area. He said he had stopped to "take a leak" and that they were on their way to New Prague to visit a friend. Ferderer asked who the friend was and apparently no name was given. Ferderer told the men that there had just been a burglary in the area and that they were checking it out. He did not tell the men that they were suspects.

A decision was made to separate the men from each other by placing them in separate squad cars. Ferderer did this by removing each of the men, one at a time, frisking him for weapons and then placing him in a squad car. In our opinion, there were two good reasons for this: the safety of the officers, who did not know if the men had weapons in the car, and the interest in keeping the men from talking with each other and agreeing on a story if in fact they were the burglars.

After the three men were placed in the separate squad cars, Officer Gliniany contacted Officer Brandt, who was with other officers at the scene of the burglary, and asked Brandt if there were footprints at the scene. Brandt reported that there were.

Under instructions received by radio from a police sergeant at the scene of the burglary, the officers then told each of the two men with shoes to take off one tennis shoe. It was at this point that Theis says he asked one of the officers if he was under arrest, and the officer said, "No, you're being detained." One of the officers got the third tennis shoe, that of the barefoot front-seat passenger, by reaching in and removing it from the floor of the front-seat passenger side, where it had been in open view. It was then about 2:45 a.m. Officer Randall Klegin of the Savage Police Department, who had been roused from sleep by a dispatcher at 2:20 a.m., 5 minutes after the stop, drove to the scene of the stop, arriving there about 15 minutes after the shoes had been seized, picked up the three shoes, and drove them to the scene of the burglary. There he compared the distinctive treads of the tennis shoes, each a different brand, with the two different fresh tennis shoe footprints he found and he concluded that the pattern and size of each of the prints were such that the prints must have been made by two of the men.

Ten to fifteen minutes after Klegin picked up the shoes, Sergeant McColl contacted the officers at the scene of the stop and told them of the match. The officers then placed handcuffs on the three men, told them that they were being taken into custody, gave them *Miranda* warnings, and impounded the stopped car. This occurred, according to the trial court's findings, at 3:16 a.m., 61 minutes after the car was stopped.

Subsequently, a search warrant was obtained and the car was searched. Three pairs of gloves, a box of tools, a crowbar, and other items were found in the trunk.

The trial court suppressed everything. It appears to have held: (a) the stop was proper; (b) the police obtained probable cause to arrest shortly before 2:45 a.m., *i.e.*, approximately 30 minutes after the stop, shortly before the shoes were taken from the men, because by that time the police officers, as a unit, knew that there were tennis shoe prints at the scene of the

burglary and that the three men being detained each had been wearing tennis shoes that night; but (c) the officers did not have a reasonable basis for putting the men in squad cars and detaining them as long as they did; that if they had let the men go when they should have, sometime earlier, the officers would not have been able to seize the shoes and would not have been able to search the trunk.

The court of appeals in its brief unpublished opinion simply said that the police exceeded the permissible duration of an investigative stop both in scope (by placing the men in the squad cars) and in length (by continuing to detain the men after the stopping of the car "produced no new evidence giving them probable cause to arrest").

We conclude that the police acted lawfully:

■ (a) The initial stop of the car was justified by numerous cases of this court, especially *Appelgate v. Commissioner of Pub. Safety*, 402 N.W.2d 106 (Minn.1987), where we upheld a "freeze the situation" stop just like the one in this case under similar circumstances (stop of only car in area moments after report of burglary).

(b) The initial observations made by the officers after stopping the car increased the degree of objective suspicion that the occupants may have been involved in the burglary. These observations included the fact that the men were soaked with sweat and gave a lame reason for being in the area.

■ (c) The United States Supreme Court has refused to adopt any bright line, such as the 20–minute rule proposed by the American Law Institute, for the length of an investigative detention. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), makes it clear that as long as the reasonable suspicion for the detention remains, the police may continue the detention provided they act diligently and reasonably. A court reviewing whether the police acted diligently and reasonably should not indulge in unrealistic second-guessing. Sometimes a 20–minute de-

tention will be too long, sometimes a detention of more than an hour will not be unreasonable. It all depends on the facts and circumstances. *See, e.g., United States v. Montoya De Hernandez*, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985), upholding a detention much longer than the one in this case. The fact that the police in a given case might have investigated the case in a different way arguably taking less time does not mean that the police acted unreasonably. As the Court said in *Sharpe*, "The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it." 470 U.S. at 687, 105 S.Ct. at 1576.

We believe that under the cases the conduct of the police was diligent and reasonable. One must bear in mind that we are dealing with a small police department, small enough that at least one of the officers who participated in the investigation had to be awakened at home at 2:20 a.m. and summoned to help the others. Other relevant factors include that it was a burglary investigation, not just an investigation of a petty offense; that there were three men involved and that the police have to be more careful in such a situation; that it was not in the interest of the police to release the men too quickly, possibly allowing them to get away with evidence of their guilt (the tennis shoes and the items in the trunk), whereas it was not in the interest of the men stopped to be arrested hastily before the officers were satisfied that they had probable cause. In our opinion, the officers acted reasonably and diligently, in a graduated, balanced step-by-step way. Because the reasonable suspicion of the officers remained and because they acted diligently and reasonably, they were justified under *Sharpe* in continuing their detention of the men as long as they did.

■ (d) We disagree with the trial court and the court of appeals that once the officers put the men in the squad cars they converted what might have been deemed to be a detention into a *de facto* arrest for which there was no probable cause. The court of appeals in effect adopts a rule that

putting suspects in squad cars from which they are not free to leave amounts to a *de facto* arrest. The court relies for this on *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), but that is a plurality opinion which does not support such a rule. See discussion of *Royer* at 3 W. LaFave, *Search and Seizure*, § 9.2(g) (2ed. 1987). Further, the "not free to leave" language is unfortunate, because a person who is being detained temporarily is not free to leave during the period of detention, yet that does not convert the detention into an arrest. Additionally, the holding ignores *State v. Herem*, 384 N.W.2d 880 (Minn.1986), where a stopped motorist was placed in a squad car. There we said that "simply requiring defendant to sit in a police car for a short time * * * did not take the situation beyond the realm of the ordinary traffic stop. *See* Model Code of Pre–Arraignment Procedure § 110.2, comment 7 at 283 (1975)." 384 N.W.2d at 883. To the same effect, see *United States v. Rodriguez*, 831 F.2d 162 (7th Cir.1987).

Here the record establishes that the officers were merely detaining the men while they conducted a limited investigation to see if, as they suspected, the men had something to do with the burglary. The men knew—in fact were told—that they were being detained and were not under arrest. Further, when the police called the owner of the car to see if it was stolen, the police told her that the men were not under arrest but were merely being detained. The officers had the choice of leaving the men in the stopped car, but that would have been foolish because the officers were investigating the possible involvement of the men in a burglary and the men might have had one or more weapons in the car. *Cf. Wold v. State*, 430 N.W.2d 171, 175–76 (Minn.1988), and *State v. Payne*, 406 N.W.2d 511, 513–14 (Minn.1987) (cases suggesting that when police stop people suspected of burglary and other serious crime such as robbery or assault they usually have a right to frisk for weapons). They also would have been foolish to get the men out of the car and just let them stand around outside. The best decision in this case clearly was to remove the men from the car and place them in separate cars. What the officers did was reasonable and prudent.

■ (e) The final issue in our opinion is whether the police properly seized the shoes so that they could take them to the scene of the burglary and compare them with the footprints. The general issue of whether police in some circumstances may move the people being detained a reasonable distance to the scene of the crime is discussed at 3 W. LaFave, *supra*, at § 9.2(g) and at Dix, *Nonarrest Investigatory Detentions in Search and Seizure Law*, 1985 Duke L.J. 849, 896–900 (1985). We do not address that issue. It is sufficient to say that we are satisfied that the officers acted reasonably under the circumstances in taking one shoe from each of the men for the limited purpose of taking the shoes to the scene to compare with the footprints. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), dealing with the detention of personal property taken from a person, fully supports this.

In summary, we conclude that the police officers acted reasonably in stopping the car, acted reasonably in detaining the men during their investigation, acted reasonably in placing the men in separate squad cars, and acted reasonably in taking the men's shoes to the scene of the burglary for comparison with the footprints believed left by the burglars.

Reversed and remanded for trial.

WAHL, Justice, dissenting.

A detention after a stop must be reasonable in scope and duration. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The detention in this case was one hour in duration from the time of the initial stop, when the three defendants were placed in separate squad cars, until their "official" arrest. Because such a detention is unreasonable in length, I respectfully dissent. As Judge Forsberg noted in affirming the trial court, when the

stop produced no new evidence giving the police probable cause to arrest, they had no basis for detaining the defendants further during the investigation of the crime scene. It has never been a constitutional tenet in this country that the end justifies the means. I would affirm.