**STATE of Minnesota, Respondent,**

v.

**Ari David LEVIE, Appellant.**

No. A04–381.

Court of Appeals of Minnesota.

May 3, 2005.

Mike Hatch, Minnesota Attorney General, Kimberly Parker, Assistant Attorney General, St. Paul, MN, Stephen N. Betcher, Goodhue County Attorney, Goodhue County Justice Center, Red Wing, MN, for respondent.

Douglas H.R. Olson, Rider Bennett, LLP, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and WRIGHT, Judge.

## OPINION

RANDALL, Judge.

Appellant was charged with two counts of attempted use of a minor in a sexual performance, in violation of Minn.Stat. §§ 617.246, subd. 2, 609.17, subd. 1, 4(2) (2002), and two counts of solicitation of a child to engage in sexual conduct, in violation of Minn.Stat. § 609.352 (2002). Appellant waived his right to a jury trial and was convicted on all four counts by the district court. On appeal, appellant argues that the district court erred in admitting evidence of appellant's internet use and the encryption capability of his computer. Appellant also argues that the victim's testimony was too vague to support the charges against him and, specifically, the victim's testimony that she refused appellant's request to take nude photos of her was insufficient to prove an attempt. Further, appellant argues that the court improperly referred to matters outside the record, and erred by basing its finding of guilt on simulated physical conduct that was not charged in the complaint. Finally, appellant argues that all four counts were part of the same behavioral incident and, thus, separate sentences for each count were inappropriate.

## FACTS

Prior to the start of his trial, appellant objected to the admission of a forensic report on the contents of his computer known as an EnCase Report (report).[1] Appellant argued that the report was irrelevant because it showed only that appellant may have received a lot of junk-email, and that a search of "80 or 90 percent of all computers in the State" would produce similar results. But the district court determined that sections of the report were admissible, and stated, "[i]t is important for the State to be able to follow-up with that evidence to show ... what the Defendant allegedly did, how he allegedly did it, and what [the author of the report] may have found." The court went on to state that sections of the report regarding search terms such as "Lolitas" were relevant because "such a term may be aimed toward the uncovering of materials that are directed to the subject matter of sex with minors." For appellant, the district court did exclude other and more inflammatory search terms and phrases because it found them more prejudicial than probative.

At trial, the district court heard testimony from a number of witnesses, including: the victim (S.M.), her mother, the police officer who conducted the investigation, Peter Badker (Badker), and the retired

---

1. An EnCase Report is a summary of the contents of appellant's computer hard-drive. EnCase "is a forensic program sold to law enforcement ... [t]hat's used for obtaining images of hard-drives."

police officer who authored the EnCase Report, Brooke Schaub (Schaub).

S.M.'s mother testified mainly about S.M.'s relationship with appellant and the circumstances in which she learned of appellant's improper behavior with her daughter. Specifically, S.M.'s mother testified that S.M. "froze" one night in the middle of the grocery store when she defined child pornography in the context of a story about a relative. S.M.'s mother testified that she later called social services and reported that S.M. told her appellant "had offered her money to take nude photographs."

S.M. then testified at length about her experiences with appellant, who is her uncle. And S.M. was cross-examined at length regarding inconsistencies between her trial testimony and her videotaped statements to Officer Badker. Further specifics regarding S.M.'s testimony will be discussed below.

Badker next testified that, on January 7, 2003, he was contacted by Social Services and given a report that stated, "maternal uncle is soliciting the victim to let him take nude photos of her and offering her money if she complied." Badker conducted a video-recorded interview with S.M. on the same day. The videotape of the January 7, 2003 interview was admitted without objection and played in its entirety for the district court. Badker conducted a second video-recorded interview of S.M. on January 16, 2003. The January 16 tape was also admitted without objection, and was played in its entirety for the district court.

Finally, Schaub testified that, in a file entitled "research," he found the text of Minn.Stat. § 617.246, which included "the definition of minor sexual performance, sexual conduct, things of that nature." He also testified that he found an encryption program, PGP, on appellant's computer; PGP "can basically encrypt any file;" and,

"other than the National Security Agency," he was not aware of anyone who could break such an encryption. But Schaub also admitted that the PGP program may be included on every Macintosh computer that comes out today, and appellant may have had the text of Minn.Stat. § 617.246 in his computer because of prior allegations against him.

Appellant did not call any witnesses in his defense, and waived his right to testify. After closing arguments and an adjournment, the court explained its findings orally, noting that: appellant frequently hosted sleepovers for 8 to 10–year old girls; appellant's relationship with S.M. had qualities of a "fixation;" the physical evidence presented was not sufficient to support a conviction, but such evidence was "taken into account;" the "evidence tends to show that an encrypting capability was employed by the Defendant;" and there are "occasions that indicate that there was advance notice of that so called surprising and thorough search warrant" executed at appellant's home.

The court found that the statements of S.M. were "[c]ritically important for the court's determination," and acknowledged that it "spent the most time" examining S.M.'s testimony. Further, the court noted that "the poses which [S.M.] described are very specific." And the court stated that "there is a consistency that runs from the first time she's reporting it on through to when she gets off of the stand. In her testimony, the consistency is what is happening to her. It gets amplified; it gets changed in terms of numbers of times, but basic things, is the same." And "she's consistent in many respects even on the stand, regarding frequencies, numbers of times it has happened, and as I sense, not telling the whole story still. But she's telling the truth about the guts of this case, absolutely."

Finally, the district court found that there was evidence corroborating S.M.'s testimony. The court cited "some evidence of grooming from the photos;" appellant's "computer knowledge and skills;" and that S.M. "talk[ed] about [appellant] placing stickers on her nipples."

The district court subsequently found appellant guilty on all four counts. Appellant was sentenced to a stayed sentence on each of the four counts "with concurrent probation and conditions on each count." This appeal followed.

## ISSUES

1. Did the district court err in admitting evidence concerning appellants internet usage and encryption capability for his computer?

2. Is there sufficient evidence to support appellant's conviction for two counts of Attempted Use of a Minor in a Sexual Performance and two counts of Solicitation of a Minor to Engage in Sexual Conduct?

3. Does the complaint adequately set forth the essential facts constituting the offenses of which appellant was convicted?

4. Did the district court's findings regarding matters outside of the record deny appellant his right to a fair trial?

5.Does appellants sentence violate Minn. Stat. § 609.04, subd. 1(4) (2002) (multiple convictions), or § 609.035 (2002), which prohibits multiple sentences for offenses arising out of the same behavioral incident?

## ANALYSIS

### I. Relevance

 Appellant first argues that he is entitled to a new trial because the district court erred in admitting irrelevant evidence of his internet usage and the existence of an encryption program on his computer. Rulings involving the relevancy of evidence are generally left to the sound discretion of the district court. *State v. Swain*, 269 N.W.2d 707, 714 (Minn.1978). And rulings on relevancy will only be reversed when that discretion has been clearly abused. *Johnson v. Washington County*, 518 N.W.2d 594, 601 (Minn.1994). "The party claiming error has the burden of showing both the error and the prejudice." *State v. Horning*, 535 N.W.2d 296, 298 (Minn.1995).

Appellant argues that his "internet use had nothing to do with the issues in this case;" "there was no evidence that there was anything encrypted on the computer;" and that he "was prejudiced because the court specifically used this evidence in its findings of fact and in reaching its verdict." We are not persuaded by appellant's arguments. The record shows that appellant took a large number of pictures of S.M. with a digital camera, and that he would upload those pictures onto his computer soon after taking them. We find that evidence of appellant's internet use and the existence of an encryption program on his computer was at least somewhat relevant to the state's case against him. *See* Minn. R. Evid. 401.

### II. Double Jeopardy (A)

#### 1. Appellant's conviction of more than one crime based on the same facts

 Before turning to appellant's sufficiency of the evidence claims, we address the double-jeopardy issues implicated by his four convictions.

In Minnesota, upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense is "[a] crime necessarily proved if the crime charged were proved." Minn.Stat. § 609.04, subd. 1(4), (2002). Subdivision 2 of section 609.04 points out that "[a] con-

viction or acquittal of a crime is a bar to further prosecution of any included offense...." In this case, identical facts were used to fulfill the essential elements of attempted use of a minor in a sexual performance and soliciting a child to engage in sexual conduct.

Count 1 of the complaint charges appellant with attempted use of a minor in a sexual performance under Minn.Stat. § 617.246, subd. 2 (2002), and Minn.Stat. § 609.17, subd. 1, 4(2) (2002). Count 1 states, in relevant part:

In the time period from approximately July 2002, through mid-December 2002, the defendant ... with the intent to commit a crime ... offered money to and attempted to persuade [S.M.] to allow him to take a photograph of her naked vagina and to pose naked for him with her legs straddling his body as he lays between her legs and takes a picture of her naked vagina.

Count 2 of the complaint charges appellant with attempted use of a minor in a sexual performance under Minn.Stat. § 617.246, subd. 2, and Minn.Stat. § 609.17, subd. 1, 4(2). Count 2 of the complaint states, in relevant part:

In the time period from approximately late December 2002 through January 4, 2003, the defendant, with the intent to commit a crime ... offered money to and attempted to persuade [S.M.] to pose and to allow the defendant to take a close up photograph of her naked vagina.

Count 3 of the complaint charges appellant with solicitation of a child to engage in sexual conduct under Minn.Stat. § 609.352 (2002). Count 3 of the complaint states, in relevant part:

In the time period from approximately late December 2002 through January 4, 2003 ... the defendant solicited a child ... to wit: offered money to [S.M.] in

order to entice her to pose for a picture and to allow him to take a "straight on" picture of her naked vagina.

And Count 4 of the complaint charges appellant with solicitation of a child to engage in sexual conduct under Minn.Stat. § 609.352. Count 4 of the complaint states, in relevant part

In the time period from approximately July 2002, through mid-December 2002 ... the defendant ... solicited a child ... to wit: offer money to [S.M.] in order to entice her to allow him to photograph her naked vagina and to pose naked for him with her legs straddling his body while he lays in between her legs to take the photograph.

The state can try to fashion a complaint with separate charges or counts based on similar conduct, but when the conduct merges into "an included offense," the defendant can only be convicted of one or the other, the crime charged or an included offense. Put another way, if it is against the law in a particular municipality to ride a horse on Sunday, you cannot be convicted of two separate counts if the first count charges you with "riding a horse" and the second count charges you with "being seen astride a horse." You will "necessarily prove one" if you prove the other.

Accordingly, we vacate appellant's two convictions for attempted use of a child in a sexual performance (Counts 1 and 2). Appellant is left with one conviction for solicitation for the time period of "late December 2002 through January 4, 2003," and one conviction for solicitation for the time period of "July 2002, through mid-December 2002."

Because we vacate two of appellant's convictions under Minn.Stat. § 609.04, subd. 1(4), we do not need to analyze appellant's conduct under Minn.Stat. § 609.035 (2002), the "single-behavioral-in-

cident" statute. We note that it is to appellant's benefit to have his convictions vacated pursuant to Minn.Stat. § 609.04, subd. 1(4). This is so because, under Minn.Stat. § 609.035, relief can lead to sentencing on only one count, but the other convictions would remain on the books and become part of appellant's record.[2]

## 2. Sufficiency of the evidence

■ In light of our vacation of appellants two attempt convictions, we will analyze appellants sufficiency of the evidence claims only in the context of the remaining solicitation convictions (Counts 3 and 4). In considering a claim of insufficient evidence, this courts review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). And this court applies the same standard of review to bench trials and jury trials when examining a sufficiency of the evidence claim. *Davis v. State*, 595 N.W.2d 520, 525 (Minn.1999).

In *State v. Koenig*, the supreme court analyzed Minnesota's solicitation statute, and clarified the definition of the term solicitation as follows:

"Solicit" is defined as "commanding, entreating, or attempting to persuade a specific person. Minn.Stat. § 609.352, subd. 1(c) (2002). The dictionary definition of "solicit is "[t]o seek to obtain by persuasion entreaty, or formal application." While we do not rely on this definition of solicit because the statute provides a definition, we note that the statute's definition appears to be in accord with the general understanding of the word "solicit." "Entreat is defined as "[t]o make an earnest request of." "Earnest" is defined as "[m]arked by or showing deep sincerity or seriousness." Regarding an attempt to persuade, an attempt is defined as "[a]n effort or try." "Persuade" means "[t]o cause (someone) to do something by means of argument, reasoning, or entreaty." "Command" means "[t]o direct with authority; give orders to." The statute requires that the acts of commanding, entreating, or attempting to persuade be directed at a specific person. Minn.Stat. § 609.352, subd. 1(c).

666 N.W.2d 366, 373 (Minn.2003) (citations omitted). This court has also stated that "[s]olicitation, like the offer to engage in sexual conduct for hire, is an inchoate activity which permits application of Minn. Stat. § 609.352 to conduct that is in some degree ambiguous." *State v. McGrath*,

---

2. Historically, Minn.Stat. § 609.035 and Minn.Stat. § 609.04, subd. 1(4) are close, if not interchangeable. An examination of a 1966 case, *State v. Reiland*, (which we do not need because, as stated above, we are deciding this case based on section 609.04), shows an intentional emphasis on section 609.035 as preventing *multiple prosecutions* as well as multiple punishment where you have a classic "single behavioral incident." *See* 274 Minn. 121, 123, 142 N.W.2d 635, 637 (1966) ("while there is no necessity for reiterating the background, policy, and purpose of the statute, it must be emphasized that it does prohibit multiple prosecutions as well as double punishment. . . .").

In recent years, section 609.04 has been used as the means to vacate convictions. *See State v. Bookwalter*, 541 N.W.2d 290, 294 n. 2 (Minn.1995) ("Minnesota Statute section 609.04 generally governs the question of whether multiple convictions, as opposed to multiple sentences, are permitted."); *accord Langdon v. State*, 375 N.W.2d 474, 476 n. 1 (Minn.1985) ("The issue of when multiple convictions based on a single act or behavioral incident are permitted is covered by Minn. Stat. § 609.04 (1984), which is not at issue here, since petitioner, by pleading guilty to four burglary charges, in effect conceded that four convictions were proper.").

574 N.W.2d 99, 102 (Minn.App.1998) (quotation omitted), *review denied* (Minn. Apr. 14, 1998). These definitions indicate that S.M.'s testimony and out-of-court statements are sufficient to support the remaining convictions. *See State v. Lanam,* 459 N.W.2d 656, 661–62 (Minn.1990) (holding evidence consisting largely of four-year-old victims out-of-court statement identifying defendant as perpetrator was sufficient to sustain defendants conviction of first-degree criminal sexual conduct).

 Here, the district court relied on both S.M.s testimony at trial and her out-of-court statements, which were recorded by Badker on January 7 and 16, 2003.[3] At trial, S.M. testified that appellant first asked her if he could take nude photos of her when she was eight years old, and she agreed to allow such photos when she was nine years old. S.M. also testified at trial that appellant would ask her to pose on the bed or "[s]itting on a stool with my hands like this, pushing on the stool, and my legs out," while wearing nothing, and that appellant asked her to take "the gymnastics" pictures without her clothes on "[f]our or five times." And S.M. testified that appellant, on numerous occasions, offered her between $5 and $100 to pose nude for him.

In the January 7 interview, S.M. stated that appellant told her he wanted to take a "straight-on" photograph of her vagina "the time before last." The record indicates that S.M.s reference to "the time before last" meant the second to last time that she visited appellants home, which, as the state points out, would have been in December 2002. In the January 16 interview, S.M. also stated that, in November 2002, appellant took pictures of her without her clothes on and "was telling [her] to do poses" while she was behind a white curtain.

 Appellant contends that the evidence is insufficient because S.M.s testimony was, at times, inconsistent. However, even when a child's statements are inconsistent, such evidence standing alone may support a conviction. *See State v. Blair,* 402 N.W.2d 154, 158 (Minn.App.1987) (holding that, despite numerous inconsistencies in child-victims testimony, such testimony standing alone supported jurys verdict). Further, the weight and credibility of witnesses testimony are the province of the fact-finder. *State v. Dickerson,* 481 N.W.2d 840, 843 (Minn.1992). While there were inconsistencies between S.M.s trial testimony and her videotaped statements to Badker, the record is clear that the district court believed her enough to enter a verdict of guilty on the charged counts.

 We note that, generally, exact dates need not be alleged where sexual abuse is charged, particularly when child-

3. We note that appellant's trial counsel did not object when the videotapes were received in evidence at trial. And failure to make a timely objection to the admission of evidence is a bar to appeal. *State v. Miller,* 573 N.W.2d 661, 675 (Minn.1998). Nevertheless, if the admission is plain error it may be reviewed. *Id.* But appellant does not argue plain error and issues not briefed on appeal are waived. *State v. Butcher,* 563 N.W.2d 776, 780 (Minn.App.1997), *review denied* (Minn. Aug. 5, 1997). We also note that, at trial, appellant's counsel stated on the record his objection to Badker testifying at length regarding the taped interview because the tape was "the best evidence" of what was said, and of S.M.'s demeanor at the time. On appeal, appellant's counsel now argues that "[t]he videotape was presumably offered into evidence as a prior consistent statement" and "[t]he use of the videotape to convict Appellant ... violates defendant's right of confrontation and demonstrates that there is little admissible evidence to support these convictions." But it is clear that the tapes were admitted at trial as substantive evidence with no restrictions, and that appellant's counsel vigorously cross-examined S.M. regarding the differences between her trial testimony and her videotaped statements.

victims are involved. *See State v. Williams,* 363 N.W.2d 911, 914 (Minn.App. 1985) (noting particular time not an element of offense), *review denied* (Minn. May 1, 1985); *State v. Becker,* 351 N.W.2d 923, 927 (Minn.1984) (allowing the state to charge multiple acts of sexual abuse over an unspecified period of time where defendant availed herself of discovery opportunities). However, S.M. did, importantly, identify instances of appellant's solicitous advances during the *two separate time frames* in her January 7 and January 16 videotaped statements to Badker.

■ Finally, appellant argues both that the evidence does not show he was soliciting "lewd" photographs, and that "naked child photography is not illegal." But, as appellant points out in his own brief, "the purpose of the child-solicitation statute is to prohibit any persuasive conduct by adults that might entice children to engage in sexual activity." *State v. Coonrod,* 652 N.W.2d 715, 723 (Minn.App. 2002). His only citation in support of the proposition that he was not soliciting S.M. to engage in "sexual activity" is a court of appeals case regarding the conduct of a woman employed as an exotic dancer. *See State v. Botsford,* 630 N.W.2d 11, 17 (Minn. App.2001), *review denied* (Sept. 11, 2001). It is clear that the standard for obscenity or lewdness in the context of exotic dancing is not the same as that applied when children are involved. *See Koenig,* 666 N.W.2d at 373–75.

With S.M.s extensive trial testimony regarding appellants behavior in mind, and viewing the evidence in the light most favorable to the verdict, we find that appellant fails in his challenge to the sufficiency of the evidence on the remaining two counts.

### III. Due Process

■ Appellant next argues that the district court "convicted [him] for allega-

tions that are not charged in the Complaint," and his right to prepare a defense was therefore infringed upon. Appellant claims that the district court "added an additional offense not charged" when it cited the placing of stickers on S.M.'s breasts as support for ·his convictions. This is simply not the case.

Appellant's claim that "he had no notice that the court was going to render its verdict based on" the breast-sticker incident and, thus, his right to put on a defense was violated, is a misstatement of the law. *See State v. Bias,* 419 N.W.2d 480, 486 (Minn.1988) (holding "that a conviction after a fair trial will stand unless there is actual proof that defendant has in fact been misled as to *the charge* brought against him, to his prejudice) (emphasis added)." There was no confusion as to the charges brought here, there were simply more facts brought out at trial than were stated in the complaint. *See Minn. R.Crim. P.* 2.01 ("[t]he complaint is a written signed statement of the essential facts constituting the offense charged"). As appellant's counsel conceded in his oral argument before this court, relevant facts not previously listed in the complaint may be, and often are, elicited and admitted during criminal trials. There is absolutely no support for the proposition that the state cannot attempt to introduce evidence not previously identified in the criminal complaint. The complaint is simply the charging document and, as a matter of fact, the standard criminal jury instructions will tell the jury that the complaint itself is not evidence. *See* 10 *Minnesota Practice,* CRIMJIG 1.01 (1999). There are criminal rules of procedure governing the pretrial exchange of contemplated evidence. *See* Minn. R.Crim. P. 7.01. But a claimed discovery violation is not our issue here.

It is clear that the complaint put appellant on notice that he would have to defend

himself against allegations that he had attempted to engage S.M. in a sexual performance, and that he had solicited her to engage in sexual conduct. *See State v. DeVerney*, 592 N.W.2d 837, 847 (Minn. 1999). The language of the complaint made plain what the state basically contended had happened. *Id.* (citation omitted). Accordingly, because the complaint gave appellant sufficient notice of the charges against him, we refuse to overturn the verdict on these grounds.

### IV. Findings of Fact

Appellant argues that the district court's findings regarding an alleged lack of surprise on his part when the search warrant was executed, the encryption capability of his computer, and the court's prior experience in sexual abuse cases, are not supported by the record and indicate appellant did not receive a fair trial; and, thus, reversal of his convictions is required. We disagree. It is clear that the district court, in making these findings in its role as the trier of fact, was simply explaining the reasons behind its credibility determinations. Just as a jury can, in deciding the guilt or innocence of a defendant, a district court is entitled to rely on any admitted evidence that bears on the believability and weight of the witnesses and, in fact, "should rely in the last analysis upon [its] own experience, good judgment, and common sense" in making its decision. *See* 10 *Minnesota Practice*, CRIMJIG 3.12 (1999) ("Evaluation of testimony-believability of witnesses"). As such, we find nothing improper in the district court's explanation of its findings.

We also note that the district court's findings do not detract from its main holding that S.M. testified truthfully. S.M.'s testimony, if taken as true by the district court, could have been legally sufficient to support the convictions here. *See Blair*, 402 N.W.2d at 158 (holding despite numer-

ous inconsistencies in child's testimony, such testimony standing alone supported jury's verdict). We find appellants argument on this issue without merit.

### V. Double Jeopardy (B)

Finally, appellant argues that his sentence violates Minn.Stat. 609.035 (2002). Minnesota's statutory double jeopardy protection prohibits multiple sentencing for conduct that is part of a single behavioral incident. Minn.Stat. § 609.035, subd. 1.

As noted, this issue is mooted by our decision to vacate appellant's two attempt convictions using the authority of Minn. Stat. § 609.04, subd. 1(4). Thus, the sentences imposed by the district court on those two counts cease to exist and no analysis under section 609.035 is needed.

As earlier noted, we reject appellant's sufficiency argument on the solicitation charges, and find there is enough evidence in the record to support sentencing appellant on the two remaining solicitation charges, one in each of the two different time frames. Accordingly, we remand to the district court for resentencing consistent with this opinion.

### DECISION

Evidence of appellant's computer usage and the presence of an encryption program on his computer was relevant to the state's case. We affirm the district court's evidentiary rulings.

Because we find that appellant's two convictions for attempted use of a minor in a sexual performance were based on the same facts and the same time frame as his two solicitation convictions, we vacate his convictions on the attempt charges. Appellant's other challenges to his solicitation convictions are without merit.

Because of our reversal and vacation of appellant's attempt convictions, we vacate

those two sentences and remand to the district court for resentencing.

**Affirmed in part, reversed and vacated in part, and remanded.**