*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1129**

State of Minnesota,
Respondent,

vs.

Crystal Ann Olson,
Appellant.

**Filed June 17, 2024
Affirmed in part, reversed in part, and remanded
Kirk, Judge**[*]

Pipestone County District Court
File No. 59-CR-21-317

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Damain Sandy, Pipestone County Attorney, Pipestone, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Kirk, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KIRK**, Judge

Appellant challenges her convictions of fourth-degree assault of a peace officer, arguing that (1) probable cause did not support her arrest; (2) the arresting officers' violent conduct violated her due-process rights; (3) the state failed to present sufficient evidence to sustain her convictions; and (4) the district court improperly entered adjudications and imposed sentences on her lesser-included offenses. In her pro se supplemental brief, appellant reiterates her counsel's sufficiency-of-the-evidence argument. We affirm in part, reverse in part, and remand.

## FACTS

In July 2021, law enforcement responded to a report of a woman at a local church who had her shirt pulled over her head, was not wearing any shoes, and who appeared to need assistance. Responding officers arrived to find the woman leaning against a dumpster, mumbling indiscernibly, with her shirt still pulled over her head. After asking if she needed assistance, officers recognized the woman as appellant Crystal Ann Olson. Officers observed that appellant was twitching, sweating profusely, grinding her teeth, and had dilated pupils despite it being a sunny day. Based on their observations and officer J.R.'s training as a certified drug-recognition evaluator, the officers believed that appellant was under the influence of an artificial stimulant. Officers testified that they noticed that appellant had something "balled up" in her hand and asked her to drop it.

Instead, appellant moved the item "towards her mouth like she was going to ingest [it]." Two officers responded by grabbing appellant on either side to prevent her from

2

ingesting the item. However, appellant broke free from their grip, requiring a third officer to intervene and handcuff her. During the struggle, appellant dropped the item in her hand and officer J.R. placed his boot over it. Officer J.R. testified that, after she was handcuffed, appellant stomped on his foot and kicked him in the shin. After officer J.R. concluded that appellant was not suffering a medical emergency, officers attempted to place her in a squad vehicle to transport her to jail.

However, appellant refused officers' numerous requests to sit in the squad vehicle. To resolve the stalemate, officer J.R. entered the backseat and grabbed appellant under her arms while another officer lifted her feet, and the pair forced appellant into the vehicle. Officer J.R. testified that, while he was clearing the backseat, appellant kicked him on his upper thigh through the backseat door. Once officers secured appellant, they learned that the item in her hand was an envelope containing identification papers and cash.

After arriving at the jail, appellant refused several requests to exit the vehicle. Eventually officer J.R. grabbed the back of appellant's arm to remove her from the vehicle, at which point appellant arched back into her seat, causing her handcuff to cut officer J.R.'s wrist. Officer J.R. punched appellant once in the arm to free his wrist. Following the skirmish, officer J.R. testified that the only observable injuries appellant had were scratches on her wrist and blood on her leg. Officer J.R. further testified that appellant subsequently kicked, pounded, and headbutted her cell door after being placed in the jail.

Respondent State of Minnesota charged appellant with one count of felony fourth-degree assault of a peace officer with demonstrable bodily harm under Minn. Stat. § 609.2231, subd. 1(c)(1) (2020) (count I). At the omnibus hearing, the defense moved to

3

dismiss the charge, arguing that appellant's arrest lacked probable cause because she was "basically being attacked by the police." The district court denied appellant's motion, determining that the facts established by the complaint reasonably showed that officers properly used force to fulfill their duty to provide aid.

The state subsequently amended its complaint to allege five additional counts, including gross-misdemeanor fourth-degree assault of a peace officer under Minn. Stat. § 609.2231, subd. 1(b) (2020) (count III); obstructing legal process under Minn. Stat. § 609.50, subd. 1(2) (2020) (count V); and disorderly conduct under Minn. Stat. § 609.72, subd. 1(3) (2020) (count VI).[1]

At trial, the state presented the squad-vehicle video from appellant's arrest and testimony from the three arresting officers, while the defense presented testimony from appellant and M.Z., the 911 caller. M.Z. testified that he did not see appellant stomp on officer J.R.'s foot and that appellant was not being disruptive or overly aggressive. Appellant testified that she was in a "very extreme manic state" caused by mental illness and that she was simply trying to give officers her identification papers when they seized her. Appellant further testified that the officers caused her numerous injuries and denied her any medical treatment. Based on appellant's testimony, the district court granted the defense's request to include a jury instruction on self-defense.

---

[1] The state also added two counts of fourth-degree assault against officer J.W. (counts II and IV). The district court acquitted appellant of those charges following the state's case-in-chief, and those charges are not at issue here.

The jury found appellant guilty of all four counts. The district court sentenced appellant to concurrent 366-day sentences on counts I and III, stayed for 3 years, and imposed a 30-day jail sentence, with credit for five days. For counts V and VI, the district court adjudicated appellant guilty but did not impose sentences.

This appeal follows.

**DECISION**

**I.      The district court did not err by determining that probable cause supported appellant's warrantless arrest.**

Appellant argues that the district court erred by determining that probable cause supported her arrest because (1) officers performed a warrantless seizure that was not justified under the emergency-aid exception when they grabbed appellant to prevent her from potentially ingesting the item in her hand and (2) officers "arrested" her before she committed the underlying assaultive behavior. We are not persuaded.

Appellate courts review a district court's factual findings for clear error but review its application of the probable-cause standard to those facts de novo. *State v. Abdus-Salam*, 1 N.W.3d 871, 877-78 (Minn. 2024). Probable cause to arrest exists when a reasonable person, viewing the circumstances objectively, "would entertain an honest and strong suspicion that a specific individual has committed a crime." *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011) (quotation and emphasis omitted). "[A] district court should deny a motion to dismiss [a] charge for lack of probable cause if it is satisfied that the facts appearing in the record, including reliable hearsay, would preclude the granting of a motion

for a judgment of acquittal if proved at trial." *Abdus-Salam*, 1 N.W.3d at 878 (quotation omitted).

**A. The officers' seizure of appellant was justified under the emergency-aid exception.**

Both the United States and Minnesota constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless seizures are generally unreasonable absent a legally recognized exception. *State v. Horst*, 880 N.W.2d 24, 33 (Minn. 2016).

"Under the emergency-aid exception, officers may help an injured person or act to protect life or property if they have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property." *Ries v. State*, 920 N.W.2d 620, 632 (Minn. 2018) (quotation omitted). To invoke the exception, officers do not need to believe "criminal activity is afoot as long as they are objectively motivated by the need to give aid." *Id.*

Here, officers responded to a report that a woman had her shirt over her head, was not wearing shoes, and appeared to need help. Officers reported that appellant seemed to be under the influence of a stimulant and was incoherent, sweating profusely, and had "blown pupils" and bulging neck veins. Based on his specialized experience as a drug-recognition evaluator, officer J.R. contacted emergency medical services. Considering the relevant circumstances, including appellant's physical symptoms and officers not knowing what she was holding, we conclude that the officers had "reasonable grounds" to believe that there was an emergency and were "objectively motivated by the need to give aid"

6

when they grabbed appellant to prevent her from ingesting the unknown item in her hand. *Id.*

Appellant relies on our nonprecedential decision in *Cadwell v. Comm'r of Pub. Safety*, No. A19-1797, 2020 WL 5107304 (Minn. App. Aug. 31, 2020) to argue that, because she could communicate with officers and decline assistance, there was no "immediate need" to provide aid. In *Cadwell,* we concluded that an officer's belief that there was a medical emergency based solely on the defendant's driving conduct was insufficient to invoke the emergency-aid exception. *Id.* at *3.

Conversely, here the officers had far more substantial grounds to believe that immediate intervention was necessary based on their own specialized expertise, appellant's physical and mental symptoms, and appellant's affirmative conduct in moving an unknown and potentially dangerous substance towards her mouth. The district court therefore properly determined that the officers' seizure of appellant was lawful.

**B. Officers did not arrest appellant until after she assaulted them.**

Appellant argues that she was "arrested" once officers handcuffed her and that, because she was handcuffed before officers had probable cause to believe she had committed a crime, her arrest was unlawful. We disagree.

An arrest occurs when a reasonable person would conclude that they are both *under arrest* and *not free to leave* because "a person who is being detained temporarily is not free to leave during the period of detention, yet that does not convert the detention into an arrest." *State v. Moffatt*, 450 N.W.2d 116, 119–20 (Minn. 1990). Further, "briefly handcuffing a suspect while the police sort out the scene of an investigation does not per

7

se transform an investigatory detention into an arrest." *State v. Munson*, 594 N.W.2d 128, 137 (Minn. 1999). An individual who is placed in handcuffs is not necessarily under arrest if they are handcuffed to ensure officer safety. *State v. Walsh*, 495 N.W.2d 602, 605 (Minn. 1993). Appellate courts use an objective test to determine if officers' actions were justified by safety concerns. *State v. Askerooth*, 681 N.W.2d 353, 368 (Minn. 2004).

We conclude that appellant was not "arrested" until after she kicked officer J.R. Officers handcuffed appellant only after she physically resisted their efforts to secure the unknown item. After officers handcuffed appellant, she stomped on officer J.R.'s foot, at which point officer J.R. "warned her she would get arrested." Officer J.R. then announced that appellant was under arrest after she kicked him again.

The officers reported and testified that they handcuffed appellant to ensure her safety as well as their own. These safety concerns were reasonable given appellant's physical and mental symptoms and because she physically resisted officers throughout the encounter, including while officers were attempting to handcuff her. Further, after appellant stomped on officer J.R.'s foot, he warned her that she would be arrested if she kicked him again, affirmatively signaling to appellant that, although officers had placed her in handcuffs, she was only being temporarily detained. *Moffatt*, 450 N.W.2d at 120. Because appellant's assaultive behavior occurred in the presence of the officers, they were permitted to arrest her without a warrant. Minn. Stat. § 629.34, subd. 1(c)(1) (2020).

Because both the officers' initial seizure and subsequent arrest of appellant were valid under exceptions to the warrant requirement, and because the facts established by the complaint and police reports would preclude a judgment for acquittal if proved at trial, the

district court did not err by denying appellant's motion to dismiss for lack of probable cause. *Abdus-Salam*, 1 N.W.3d at 878.

## II. The arresting officers' conduct did not violate appellant's due-process rights.

For the first time on appeal, appellant contends that, under the supreme court's decision in *City of St. Louis Park v. Berg*, 433 N.W.2d 87 (Minn. 1988), the arresting officers' violent conduct precluded her convictions. We are not convinced.

Both the United States and Minnesota constitutions guarantee a criminal defendant the right to due process. U.S. Const. amend XIV, § 1; Minn. Const. art. I, § 7. Appellate courts review unobjected-to due-process claims for plain error.[2] *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). "Plain error exists when there is (1) error, (2) that is plain, and (3) affects the defendant's substantial rights." *Id.* "An error is plain if it is clear or obvious." *Id.* (quotation omitted). If all three requirements are satisfied, then appellate courts consider whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.* (Quotation omitted.)

Appellant's due-process claim stems from dicta in *Berg* which states that, although citizens generally do not have the right to resist an unlawful arrest, "[p]erhaps there may be a rare instance where the force used by police in making an arrest is so outrageous, so gratuitously violent, that . . . due process should bar the government from obtaining a conviction for the defendant's resistance." 433 N.W.2d at 91. However, the court in *Berg*

---

[2] We acknowledge that appellant may have waived her due-process argument by failing to address the plain-error standard in her brief. *See State v. Levie*, 695 N.W.2d 619, 627, n.3 (Minn. App. 2005) (noting that appellant who did not argue plain error in appellate brief waived the issue). We assume without deciding that appellant preserved her claim.

ultimately concluded that, although the arresting officers unlawfully entered the defendant's home, pinned him underneath a collapsed bedframe, and repeatedly beat him with a flashlight, the defendant could still be convicted of assaulting the officers while resisting the illegal arrest. *Id.*

Here, officers initially used force to prevent appellant from ingesting an unknown, potentially dangerous substance. Then, due to appellant's refusal to comply with their commands, officers had to forcibly move her into and out of the squad vehicle, causing her to sustain several bruises. Even if we concluded that *Berg*'s dicta provides a cognizable due-process claim, the conduct of appellant's arresting officers is less severe than in *Berg*, and well below the "gratuitously violent" threshold that the *Berg* court contemplated as a due-process violation. *Id.* Appellant was therefore not entitled to dismissal on due-process grounds. *Beecroft*, 813 N.W.2d at 836.

### III. The state presented sufficient evidence to sustain appellant's convictions.

Appellant asserts that the state failed to prove that (1) her arresting officers were effecting a lawful arrest or executing a lawful duty; (2) she had the requisite mens rea to be guilty of fourth-degree assault; and (3) she did not act in self-defense. We address each argument in turn.

When considering insufficient evidence claims, appellate courts examine the record to determine whether the evidence, when viewed in the light most favorable to the conviction, could reasonably support the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). Evidence is sufficient to support a guilty verdict if a factfinder could

10

reasonably conclude that the defendant committed the charged offense. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012).

**A. The state proved that the officers lawfully arrested appellant.**

To be convicted of fourth-degree assault against a peace officer under Minn. Stat. § 609.2231 (2020), the officer must be "effecting a lawful arrest or executing any other duty imposed by law" at the time of the assault. Appellant argues that, because the officers testified that she had not done anything illegal by raising her identification papers towards her mouth, and because officers later determined that there was no medical emergency, the jury had no basis to conclude that the officers lawfully arrested her. We are not persuaded.

Because "[a]n arrest is lawful if an officer has probable cause to believe that a person has committed a crime," *State v. Bradley*, 908 N.W.2d 366, 369 (Minn. App. 2018), our analysis on this issue is similar to the probable cause issue discussed above. An officer has probable cause to believe a person has committed a crime when that person commits a public offense in the officer's presence. Minn. Stat. § 629.34, subd. 1(c)(1).

Here, officers lawfully seized appellant to provide emergency aid and lawfully arrested appellant after she kicked officer J.R. in the shin. *Id.* Appellant subsequently kicked officer J.R. in the thigh and caused him to be cut by her handcuff. The assaultive behavior underlying counts I and III therefore occurred while officers were "effecting a lawful arrest," providing sufficient evidence to prove the "lawful arrest" element on both counts.

Appellant argues that the officers illegally seized her when they grabbed her arms without probable cause, precluding the jury from finding that her subsequent arrest was

lawful. However, considering the evidence in the light most favorable to the verdict, including the officers' testimony regarding appellant's physical symptoms and cognitive disorientation, officer J.R.'s experience as a drug-recognition evaluator, and officers' testimony that it appeared that appellant was going to ingest an unknown item, the jury could have reasonably concluded that officers seized appellant based on their duty to provide emergency aid. *See Ries*, 920 N.W.2d at 632. The state therefore met its burden to show that the officers lawfully seized and arrested appellant. *Pratt*, 813 N.W.2d at 874.

**B. The state proved that appellant had the requisite mens rea to be convicted of fourth-degree assault.**

Appellant argues that, because the state failed to prove that she intended to injure officer J.R. by kicking him or scratching him with her handcuffs, it failed to prove that she had the mens rea necessary to be convicted of counts I and III. We disagree.

Fourth-degree assault under section 609.2231 is a general-intent crime. *State v. Spann*, 986 N.W.2d 205, 210, n. 1 (Minn. 2023) ("[A]ssault-harm is a general intent crime, while assault-fear is a specific intent crime."). The state was therefore required to show that appellant "intended to do the physical act forbidden," but not that she intended for or knew her act to violate the law. *State v. Dorn*, 887 N.W.2d 826, 830 (Minn. 2016) (quotation omitted). General intent requires only that appellant's assaultive acts were not committed "accidentally or involuntarily." *State v. Lampkin*, 994 N.W.2d 280, 291 (Minn. 2023) (quotation omitted).

"Intent is generally prove[d] by circumstantial evidence." *Id.* Appellate courts review convictions based on circumstantial evidence in two steps. *State v. Silvernail*, 831

N.W.2d 594, 598 (Minn. 2013). First, the appellate court identifies the circumstances proved, deferring to the jury's acceptance of the state's proof of these circumstances and rejecting any contrary evidence. *Id.* at 598-99. Next, the appellate court independently examines "the reasonableness of all inferences that might be drawn from the circumstances proved." *Id.* at 599 (quotation omitted). To sustain the conviction, the circumstances proved must be consistent with the hypothesis of appellant's guilt and inconsistent with any other "rational hypothesis." *Id.* (Quotation omitted).

With respect to the gross-misdemeanor assault in count III, the state proved the following circumstances: (1) when officers arrived at the scene, appellant was incoherent, in a "very extreme manic state," and exhibiting physical symptoms consistent with being under the influence of an artificial stimulant; (2) officers grabbed appellant to prevent her from potentially ingesting a dangerous substance; (3) appellant dropped the unknown item and officer J.R. placed his foot over it; (4) appellant stomped on officer J.R.'s foot and kicked him in the shin; (5) appellant refused several requests from officers to enter the squad vehicle; (6) appellant frustrated officers' efforts to close the backseat door; and (7) appellant kicked officer J.R. before being secured in the vehicle.

Regarding the felony assault charged in count I, the state additionally proved that: (1) appellant refused to exit the squad vehicle at the jail; (2) appellant physically resisted officers' efforts to remove her from the vehicle; (3) after officer J.R. reached behind appellant to remove her from the vehicle, she arched her back and placed all of her weight on to his wrist; and (4) appellant's actions caused a visible injury to officer J.R.

13

These circumstances are sufficient to demonstrate that appellant intended to commit the physical act forbidden and that her actions were not accidental or involuntary. *Lampkin*, 994 N.W.2d at 291. Appellant relies on her own testimony and the fact that certain conduct was not captured on the squad video to argue that the record supports the alternative hypothesis that her actions were involuntary. However, the jury was not required to credit appellant's self-serving testimony, and we must assume that the jury rejected any portion of her testimony that contradicted the verdict. *State v. Jackson*, 741 N.W.2d 146, 154 (Minn. App. 2007), *rev. denied* (Minn. Oct. 21, 2008). Furthermore, the circumstantial-evidence standard does not require us to evaluate what evidence is lacking, but whether the circumstances proved at trial are consistent with appellant's guilt. *Silvernail*, 831 N.W.2d at 599. We therefore conclude that the circumstances proved support only one rational hypothesis, that appellant intended to commit a forbidden physical act. *Dorn*, 887 N.W.2d at 830.

### C. The state disproved appellant's self-defense theory.

Appellant argues that the state failed to disprove that she committed her assaultive acts in self-defense. We are not persuaded.

"In Minnesota, a person may act in self-defense if he or she reasonably believes that force is necessary and uses only the level of force reasonably necessary to prevent the bodily harm feared." *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014). There are four necessary elements to a self-defense claim: (1) the "absence of aggression or provocation" from the defendant; (2) the defendant must actually and honestly believe that they are in imminent danger of bodily harm; (3) reasonable grounds support that belief; and (4) the

14

defendant did not have "a reasonable possibility of retreat to avoid the danger." *Id.* Once a defendant meets their burden of producing evidence to support a self-defense claim, the state must "disprove beyond a reasonable doubt at least one of the elements of self-defense." *State v. Radke,* 821 N.W.2d 316, 324 (Minn. 2012).

The parties primarily dispute the third prong regarding whether appellant's fear of bodily harm was objectively reasonable. Appellant relies on her trial testimony and the photographic evidence of her injuries to argue that "her terror over being handcuffed and manhandled when she had not committed a crime was objectively reasonable."

Viewing the evidence in the light most favorable to the verdict, we conclude that the state presented sufficient evidence to disprove that appellant's fear was objectively reasonable. Regarding the first assaultive incident underlying count III, the jury could have reasonably concluded that, based on the officers' testimony and the squad video, appellant did not have an objectively reasonable fear of harm prior to stomping officer J.R.'s foot and kicking him in the shin. Officers testified that after arriving on the scene, they tried to assist appellant but were forced to grab her to prevent her from ingesting an unknown substance, testimony which is supported by the squad video. Although appellant testified that she was compliant and only began resisting officers after they seized her, she admitted that she was in an "extreme manic state," undermining that her actions were objectively reasonable. Further, we must assume that the jury discredited any portion of appellant's testimony that contradicted the verdict. *Jackson*, 741 N.W.2d at 154.

Similarly, the jury could have reasonably concluded that appellant lacked an objectively reasonable fear of harm when she assaulted officer J.R in the squad vehicle.

15

While placing her in the vehicle and while removing her from it at the jail, officers prompted appellant to comply several times before her steadfast refusal led to the officers' use of force. Although appellant sustained injuries during her arrest, the jury could have concluded that a reasonable person would have understood that failure to comply with the officers' lawful commands would lead to the officers' use of physical force, and therefore neither her injuries nor her "terror over being handcuffed and manhandled" provided her with an objectively reasonable fear of harm. *Devens*, 852 N.W.2d at 258. Because the officers' testimony and the squad video would allow a jury to reasonably conclude that she did not act in self-defense, appellant's argument fails. *Pratt,* 813 N.W.2d at 874.

**IV. Appellant's misdemeanor sentence and lesser-included convictions must be vacated.**

Appellant contends that the district court abused its sentencing discretion by (1) imposing concurrent sentences on her felony and gross-misdemeanor assault charges despite both offenses emanating from the same behavioral incident; (2) imposing a felony sentence on her gross-misdemeanor conviction; and (3) entering convictions on the lesser-included offenses in counts V and VI. The state concedes that appellant's gross-misdemeanor sentence should be vacated and does not address her remaining arguments.

District courts "may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 9. A district court may not impose multiple sentences for offenses committed during the same behavioral incident. Minn. Stat. § 609.035 (2020); *State v. Barthman*, 938 N.W.2d 257, 265 (Minn. 2020).

Because appellant's assaultive conduct underlying counts I and III occurred at "substantially the same time and place" and was likely "motivated by an effort to obtain a single criminal objective," *Barthman,* 938 N.W.2d at 265, we agree with the parties that the two assaults constituted a single behavioral incident. *See also State v. Bonkowske*, 957 N.W.2d 437, 444 (Minn. App. 2021) (concluding that DWI and test-refusal charges stemmed from one behavioral incident because they arose from continuous course of conduct). We therefore remand with instructions to vacate appellant's gross misdemeanor sentence, leaving the finding of guilt in place. *See id.* Because we agree with appellant that her gross-misdemeanor sentence should be vacated, we do not reach her argument to reduce that sentence.

We also agree with appellant that the district court erroneously entered judgments of conviction on her lesser-included misdemeanor offenses. Under Minn. Stat. § 609.04, subd. 1 (2020), a defendant "may be convicted of either the crime charged or an included offense, but not both." When a defendant is found guilty of both the crime charged and an included offense, the district court may not impose a sentence or enter a conviction on the lesser offense. *State v. Walker*, 913 N.W.2d 463, 467–68 (Minn. App. 2018). Here, the district court determined that counts V and VI were lesser-included offenses of appellant's assault charges, and it therefore declined to sentence appellant on those counts. However, the record reflects that the district court entered convictions on both counts. Because the district court improperly adjudicated appellant's misdemeanor offenses, we remand with instructions to vacate those convictions, leaving the guilty verdict intact. *Id.*

**V.    Appellant's pro se supplemental brief does not warrant relief.**

In her pro se supplemental brief, appellant appears to reiterate her counsel's sufficiency-of-the-evidence argument based on cited excerpts from the squad video. For the reasons discussed above, the state presented sufficient evidence to sustain appellant's conviction, and therefore appellant's pro se brief does not warrant relief.

**Affirmed in part, reversed in part, and remanded.**